# UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

EXPLOROLOGIST LIMITED,                    )    Civil Action No. 2:07-cv-01848-LP
                                          )
                    Plaintiff,            )
                                          )
        v.                                )    The Honorable
                                          )    Louis H. Pollak
BRIAN SAPIENT aka BRIAN J. CUTLER,        )
                                          )
                    Defendant.            )
                                          )

---

## DEFENDANT'S MOTION TO DISMISS PURSUANT TO FEDERAL RULES OF CIVIL PROCEDURE 12(b)(1) and 12(b)(6)

---

Defendant Brian Sapient hereby respectfully moves this Court to dismiss

Plaintiff's Amended Complaint pursuant to Federal Rules of Civil Procedure 12(b)(6)

and 12(b)(1), for the reasons set forth in the accompanying memorandum of law.

Respectfully submitted,

Chad Cooper (Pa. I.D. No. 90067)
Samuel W. Silver (Pa. I.D. No. 56596)
SCHNADER HARRISON SEGAL & LEWIS LLP
1600 Market Street, Suite 3600
Philadelphia, PA  19103-7286
(215) 751-2269; (215) 751-2309

*Attorneys for Defendant,*
*Brian Sapient*

Dated:  June 11, 2007

## UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| EXPLOROLOGIST LIMITED, | ) | Civil Action No. 2:07-cv-01848-LP |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | The Honorable |
| | ) | Louis H. Pollak |
| BRIAN SAPIENT aka BRIAN J. CUTLER, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

## BRIEF IN SUPPORT OF
## DEFENDANT'S MOTION TO DISMISS
## PURSUANT TO FEDERAL
## RULES OF CIVIL PROCEDURE
## 12(b)(1) AND 12(b)(6)

## 1.    INTRODUCTION

Uri Geller does not like critics. In fact, he dislikes them so much that he will employ almost any means – including sending unlawful copyright takedown notices and filing frivolous lawsuits through his company, Plaintiff Explorologist Ltd. – in order to silence them. This case is one such lawsuit, brought solely to shut down Defendant Brian Sapient's First Amendment-protected efforts to foster public debate about Geller and his claims to paranormal abilities.

Sapient is a member of the Rational Response Squad ("RRS"), a group dedicated to challenging irrational claims, including claims about psychic powers. Through their Internet websites and electronic mailing lists, they stay in touch with thousands of supporters on key issues of the day, such as the ongoing debate between evolution and creationism. As part of their

activities in this area, Sapient and RRS have also spoken out against beliefs in magic, mysticism, and psychic abilities, arguing that rationality and logic explain these phenomena.

In the course of this work, Sapient and RRS have sharply criticized Geller, a world-renowned performer who became famous in the 1970s for asserting that he has "mental powers" that allow him to read minds and bend spoons. As part of that criticism, Sapient uploaded a segment of video from the 1993 PBS program "NOVA: Secrets of the Psychics," onto YouTube – a well-known Internet video service – as "James Randi exposes Uri Geller and Peter Popoff,"[1] ("NOVA Segment"). In the fourteen-minute segment, skeptic and magician James Randi examines Geller's performances and proposes a rational explanation for the Geller's supposed paranormal abilities.

In response, Geller – through his London-based company Explorologist – tried to censor the video by sending a Digital Millennium Copyright Act ("DMCA") takedown notice to YouTube, claiming the NOVA Segment somehow infringed its copyrights. Recognizing that the company had no cognizable copyright claim, in March 2007 Sapient counter-noticed pursuant to the DMCA and had the video restored on YouTube. Undeterred, Geller and Explorologist now seek to enlist this Court's assistance with their improper campaign by filing the instant Complaint, which primarily claims Sapient has violated British copyright law by posting the NOVA Segment to the United States-based YouTube service.[2]

---

[1] http://www.youtube.com/watch?v=M9w7jHYriFo (last visited June 11, 2007).

[2] This is not the first time Geller and Explorologist have tried to use the legal process to silence Geller's critics. Geller filed at least three lawsuits against James Randi, the skeptic featured in the NOVA Segment; see Geller v. Randi, 1993 WL 179293 (D.D.C. 1993), aff'd, 40 F.3d 1300, (D.C. Cir. 1994) (affirming dismissal and Rule 11 sanctions); Geller v. Randi, No. 7:89-cv-03385-CLB, (S.D.N.Y. dismissed June 18, 1990); Geller v. Randi, No 7:89-cv-07143-VLB (S.D.N.Y. dismissed June 1, 1992).

Ironically, the Complaint itself reveals the failures of Plaintiff's copyright allegations. In it, Explorologist admits that its copyright claim rests upon nothing more than the republication of an eight-second clip at the beginning of the NOVA Segment wherein an unnamed person introduces Geller at a public event by stating "his remarkable affinity for metal and his psychic abilities are well documented all over the world." That single sentence sets up Randi's subsequent commentary on Geller's so-called psychic abilities in the rest of the video. Such minimal and critical use is absolutely privileged under bedrock principles of our law, including the fair use doctrine and First Amendment. Explorologist surely knows this: that is why it has asked the Court to apply British law—which has weaker fair use and free speech protections—to the alleged "infringement," even though the NOVA Segment was uploaded by a United States resident, and is hosted on YouTube's United States servers.

This Court need not assist Plaintiff in its improper effort to punish Geller's critics. Instead, it may end this litigation now by dismissing Plaintiff's Complaint with prejudice for several reasons. First, Explorologist's foreign intellectual property and state misappropriation claims are preempted under Section 230 of the Communications Decency Act. Second, any judgment based on these foreign claims would be unenforceable as repugnant to well-established United States public policies. Third, this Court need not assert subject matter jurisdiction over the foreign copyright claims because copyright infringement is not a transitory tort and foreign copyright law cannot be invoked for actions that take place solely within the United States. Fourth, even if jurisdiction were appropriate, Plaintiff's copyright cause of action fails to state a claim for relief under basic tenets of both foreign and U.S. laws. Finally, Plaintiff's disparagement and appropriation claims fail to allege essential elements of these causes of action.

## 2.    BACKGROUND FACTS

On October 19, 1993, the U.S. Public Broadcasting Service ("PBS") television series NOVA aired a program entitled "Secrets of the Psychics" (the "NOVA Documentary"). *See* Defendant's Request for Judicial Notice ("RJN"), Ex. A (NOVA: Secrets of the Psychics); Ex. B (NOVA, Secrets of the Psychics: Program Overview).[3] The hour-long program included the NOVA Segment, an almost fourteen-minute segment in which magician and skeptic James Randi first explains how Uri Geller's allegedly supernatural feats might have been accomplished through trickery, then exposes faith healer Peter Popoff. *Compare* RJN, Ex. A ("NOVA Documentary") *with* http://www.youtube.com/watch?v=M9w7jHYriFo ("NOVA Segment") (last visited June 11, 2007). The NOVA Segment includes a few seconds of footage in which a Dr. C.J. Hughes introduces Uri Geller to an audience, stating that Geller's "remarkable affinity for metal and his psychic abilities are well documented all over the world." ("Hughes Excerpt"). *See* NOVA Documentary at 5:15-5:23; NOVA Segment at 0:50 to 0:58.

In January 2007, Defendant Brian Sapient uploaded the NOVA Segment to YouTube. *See* NOVA Segment; Am. Compl. ¶ 10. Sapient is a United States citizen residing in Philadelphia, Pennsylvania and a member of the Rational Response Squad ("RRS"), an activist group dedicated to challenging what they see as irrational claims. Am. Compl. ¶ 2. YouTube is a video-sharing website where millions of Internet users post videos and make them available to others for viewing. *See generally* http://www.youtube.com (last visited June 11, 2007). Sapient and the RRS rely on YouTube to reach thousands of audience members and promote their activist messages and campaigns online.

---

[3] http://www.pbs.org/wgbh/nova/teachers/programs/2012_psychics.html (last visited June 11, 2007).

On March 23, 2007, an agent of Plaintiff Explorologist and Geller demanded that YouTube take down the NOVA Segment pursuant to the DMCA, 17 U.S.C. § 512. As a result of Plaintiff's DMCA copyright infringement notice, Sapient's YouTube account was suspended. Sapient quickly submitted a counter-notification of noninfringement to YouTube under the DMCA, on March 27, 2007. However, as a result of Plaintiff's conduct, Sapient's account and all of his video postings (including, but not limited to, the NOVA Segment) remained unavailable for more than two weeks. On May 8, 2007, Sapient sued Explorologist and Geller in the Northern District of California, seeking damages for misrepresentation and a declaratory judgment of noninfringment. *See John Doe a/k/a Brian Sapient v. Uri Geller a/k/a Uri Geller-Freud and Explorologist Ltd. ,* N.D.C.A. Case No. 3:07-cv-02478-BZ.

Explorologist filed the instant case on May 7, 2007—just before Sapient filed his suit in California—and filed its Amended Complaint on May 23, 2007. Relying on British copyright law, Explorologist claims Sapient has infringed its United Kingdom copyright in an alleged video recording of a 1987 public Geller performance (including introductory remarks by C.J. Hughes) by posting the NOVA Segment (including the Hughes Excerpt) on YouTube. *See* Am. Compl. ¶ 10; NOVA Segment at 0:50 to 0:58. Explorologist also alleges Sapient has infringed Geller's publicity rights (of which it is the purported assignee) and commercially disparaged Explorologist by uploading another video (in March 2007) in which Sapient allegedly "accused Plaintiff of being a dummy or sham corporation and accused Uri Geller of being a professional con man and fraud and other criminal or immoral acts." Am. Compl. ¶¶ 15-21. Explorologist has not pled special damages. Am. Compl. ¶ ¶ 13-18.

## 3.    STANDARD OF REVIEW

A court may grant a motion to dismiss if it is clear that the court cannot provide relief under any set of facts that Plaintiff could prove consistent with those allegations. *Jordan v. Fox, Rothschild, O'Brien & Frankel*, 20 F.3d 1250, 1261 (3d Cir. 1994); *see also Dimeo v. Max*, 433 F. Supp. 2d 523, 527 (E.D. Pa. 2006). "Factual allegations must be enough to raise a right to relief above the speculative level…on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Bell Atlantic Corp. v. Twombly*, 127 S.Ct. 1955, 1964 (2007). Thus, the Court must accept all well-pleaded allegations in the complaint as true and draw all inferences in the plaintiff's favor, *Angelastro v. Prudential-Bache Sec., Inc.,* 764 F.2d 939, 944 (3d Cir. 1985), but need not accept "bald assertions or legal conclusions." *Morse v. Lower Merion School Dist.*, 132 F.3d 902, 906 (3d Cir. 1997) (internal quotation marks omitted); *see also Nadig v. Nagel*, 272 F. Supp. 2d 509, 511 (E.D. Pa. 2003) ("The court need not, however, accept conclusory allegations or legal conclusions.").

To assist the Court's determination, Sapient submits herewith a Request for Judicial Notice ("RJN") of the NOVA Segment that forms the basis for Plaintiff's principal allegations, of the fact that the NOVA Segment is an excerpt from the original NOVA documentary, and of the NOVA website and U.S. Copyright Office website describing the original documentary, and an appendix of relevant foreign law. While a district court generally may consider only allegations set forth in the pleadings, *Angelastro*, 764 F.2d at 944, a "document integral to or explicitly relied upon in the complaint may be considered without converting the motion [to dismiss] into one for summary judgment." *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1426 (3d Cir. 1997) (internal quotation marks omitted) (quoting *Shaw v. Digital Equip. Corp.*, 82 F.3d 1194, 1220 (1st Cir. 1996)). The rationale underlying this exception is simple:

"The primary problem raised by looking to documents outside the complaint—lack of notice to the plaintiff—is dissipated [w]here plaintiff has actual notice . . . and has relied upon these documents in framing the complaint." *Id.* at 1426 (internal quotation marks omitted); *see also Brown ex rel. Marasco v. Wiener*, 2005 WL 2989748 (E.D. Pa. 2005) ("the court may consider matters of public record, and authentic documents upon which the complaint is based...").

This Court may also consider foreign law sources; once an issue of foreign law has been properly raised, a federal court may make a determination of that law as a matter of law, and in making that determination "may consider any relevant material or source, including testimony, whether or not submitted by a party or admissible under the Federal Rules of Evidence." Fed. R. Civ. P. 44.1. "The Court has great discretion in choosing source materials when the application of foreign law is necessary." *Zurich Capital Mkts., Inc. v. Coglianese*, 383 F.Supp.2d 1041, 1052 (N.D. Ill. 2005) (examining Bahamanian law in context of motion to dismiss).

## 4.    ARGUMENT

Plaintiff's Amended Complaint is fatally flawed.  As an initial matter, all of Plaintiff's claims based on Defendant's republication of the NOVA Segment are barred by Section 230 of the federal Communications Decency Act ("Section 230"), which explicitly immunizes users of online services from claims based on their publication of previously published materials. Further, Plaintiff's claims under British copyright law are unenforceable (and therefore should be dismissed) because any judgment this Court could render on them would be repugnant to the First Amendment and the Fair Use Doctrine.  Moreover, Plaintiff has failed to establish adequate jurisdiction over its copyright claims.  Finally, even if Plaintiff were somehow able to overcome all of these obstacles, Plaintiff's Complaint must still be dismissed because it fails successfully to plead essential elements of its British copyright and state causes of action.

a.    **Section 230 of the Communications Decency Act Bars Plaintiff's Claims for Violations of British Copyright Law and Appropriation of Name or Likeness.**

Plaintiff's Complaint is primarily based on a single activity by Defendant: the republication of the NOVA Segment in the United States to the YouTube video website.[4] Section 230 of the Communications Decency Act requires that all claims based on that republication be dismissed with prejudice.[5]

■    Background on Section 230 of the Communications Decency Act

Section 230 of the Communications Decency Act represents Congress's effort to balance two deeply rooted American values: our commitment to vibrant public discourse and our desire to hold individuals accountable for genuinely harmful speech. These values have long been in tension: Claims for torts like defamation and intentional infliction of emotional distress have strong roots in our legal system, but, because they target speech, such claims may also have a chilling effect on legitimate public discourse. Not surprisingly, the rapid growth of the Internet prompted an intense Congressional debate over the right approach to mediating this tension in this new and potentially powerful forum for free speech. Section 230 was the result.

Section 230 immunizes users and providers of "interactive computer services" from liability for content originally published by third parties, 47 U.S.C. § 230, in order to encourage

---

[4] Am. Compl. Count I (¶¶6-12) and III (¶¶ 19-21).

[5] Courts regularly grant Rule 12(b)(6) motions when it is clear that Section 230 bars the claims alleged in the plaintiff's complaint. *See, e.g., Green v. Am. Online*, 318 F.3d at 472; *Dimeo,* 433 F. Supp. 2d at 527; *Parker v. Google, Inc.*, 422 F. Supp. 2d 492, 504 (E.D. Pa. 2006).

both large and small online intermediaries to open their forums for discussion, free from fear of liability for another speaker's words.   As the Fourth Circuit found in the seminal case interpreting Section 230, such liability was, "for Congress, simply another form of intrusive government regulation of speech." *Zeran v. Am. Online, Inc.*, 129 F.3d 327, 330 (4th Cir. 1997), *cert. denied*, 524 U.S. 937 (1998) ("Section 230 was enacted, in part, to maintain the robust nature of Internet communication and, accordingly, to keep government interference in the medium to a minimum.").   Recognizing that the Internet and other interactive computer services "have flourished, to the benefit of all Americans, with a minimum of government regulation," *see* 47 U.S.C. § 230(a)(4), Congress expressly sought to limit the impact on the Internet of federal or state regulation via statutory or common law causes of action.   Congress thus recognized in Section 230 what the U.S. Supreme Court later confirmed in extending the highest level of First Amendment protection to the Internet:   "governmental regulation of the content of speech is more likely to interfere with the free exchange of ideas than to encourage it."   *Reno v. ACLU*, 521 U.S. 844, 885 (1997).

   In keeping with these principles, Congress crafted an expansive immunity, covering both commercial entities and individual intermediaries – including users of online forums like YouTube—and encompassing a broad range of speech-related torts, subject only to specified narrow exceptions.   Thus, under the cloak of federal immunity, individuals such as Sapient are protected from being held liable for exchanging others' videos, articles or observations as part of the dialog carried on through newsgroups, blogs, email lists, or through the simple action of posting an interesting video on a video hosting service.

   Courts across the country, including Pennsylvania courts and the Third Circuit, have upheld Section 230 immunity and its policy of regulatory forbearance for both providers and

users of interactive computer services.  *See Dimeo v. Max*, 433 F. Supp. 2d at 528-29; *Green v. Am. Online*, 318 F.3d 465, 471 (3d Cir. 2003); *D'Alonzo v. Truscello*, 2006 WL 1768091, 2006 Phila. Ct. Com. Pl. LEXIS 244 (Phila. Ct. Common Pleas May 31, 2006).    As explained below, that immunity easily encompasses Sapient's alleged activities.

- The Text and Application of Section 230

Section 230 of the Communications Decency Act provides:

TREATMENT OF PUBLISHER OR SPEAKER.  No provider *or user* of an interactive computer service shall be treated as the publisher or speaker of *any* information provided by another information content provider.

47 U.S.C. §§ 230(c)(1) (emphasis added).  As this Court has recognized, the statute could hardly be more clear on this point: "[T]he text of the CDA itself tells all parties . . . not to treat a provider *or user* of an interactive computer service as the publisher of information posted by someone else. Moreover, it does so in mandatory terms." *Voicenet Comms., Inc. v. Corbett*, 2006 WL 2506318, 2006 U.S. Dist. LEXIS 61916 at *10 (E.D. Pa. Aug. 30, 2006) (emphasis added). Congress' mandate bars, in turn, any cause of action against a user based on such publication, because "[b]y declaring that no 'user' may be treated as a 'publisher' of third party content, Congress has comprehensively immunized republication by individual Internet users." *Barrett v. Rosenthal*, 40 Cal.4th 33, 62 (Cal. 2006). Thus, the plain "language of § 230(c)(1) confers immunity not just on 'providers' of such services, but also on 'users' of such services." *Batzel v. Smith*, 333 F.3d 1018, 1030 (9th Cir. 2003), *cert. denied*, 124 S.Ct. 2812 (2004); *Corbett*, 2006 WL 2506318 at *10.

As noted above, Congress enacted Section 230 "to promote the free exchange of information and ideas over the Internet.  In specific statutory findings, Congress stressed that '[t]he Internet and other interactive computer services offer a forum for a true diversity of

political discourse, unique opportunities for cultural development, and myriad avenues for intellectual activity.'" *Dimeo*, 433 F. Supp. 2d at 528 (quoting 47 U.S.C. § 230(a)(3)); *see also Batzel*, 333 F.3d at 1027-28 (Section 230 was intended to encourage "the unfettered and unregulated development of free speech on the Internet.").  As the Fourth Circuit explained in *Zeran*:

> The specter of tort liability in an area of such prolific speech would have an obvious chilling effect. It would be impossible for service providers to screen each of their millions of postings for possible problems.  Faced with potential liability for each message republished by their services, interactive computer service providers might choose to severely restrict the number and type of messages posted.

129 F.3d at 331; *see also Dimeo*, 433 F. Supp. 2d at 529 ("[A]bsent federal statutory protection, interactive computer services would essentially have two choices: (1) employ an army of highly trained monitors to patrol (in real time) each chatroom, message board, and blog to screen any message that one could label defamatory, or (2) simply avoid such a massive headache and shut down these fora.").  Therefore, Section 230 "bars lawsuits seeking to hold a [user or] service provider liable for its exercise of a publisher's traditional editorial roles—such as deciding whether to publish, withdraw, postpone, or alter content." *Green*, 318 F.3d at 471 (quoting *Zeran,* 129 F.3d at 330 (internal quotation marks omitted); *see also Parker,* 422 F. Supp. 2d at 501 (quoting same).

Because that harmful chilling effect would not be confined to service providers, Section 230 expressly grants the same immunity to users of interactive computer services.  47 U.S.C. § 230(c)(1) ("[n]o provider *or user* . . . .") (emphasis added).[6]  The question of the user liability

---

[6] This parity of treatment is also reflected in the statute's second immunity provision, subsection 230(c)(2), which uses the same phrasing of "[n]o provider *or user*. . . ." (emphasis added).

under Section 230 was recently considered by the California Supreme Court in *Barrett v. Rosenthal,* 40 Cal.4th 33 (Cal. 2006). Carefully reviewing the statute and its legislative history, the court noted that Congress had "consistently referred to "users" of interactive computer services, specifically including 'individuals'" and concluded that "[t]here is no reason to suppose that Congress attached a different meaning to the term 'user' in section 230(c)(1). . . ." Moreover, such an interpretation was consistent with Congress' goals:

> [T]he congressional purpose of fostering free speech on the Internet supports the extension of section 230 immunity to active individual "users." It is they who provide much of the "diversity of political discourse," the pursuit of "opportunities for cultural development," and the exploration of "myriad avenues for intellectual activity" that the statute was meant to protect. . . .By declaring that no "user" may be treated as a "publisher" of third party content, Congress has comprehensively immunized republication by individual Internet users.

*Barrett v. Rosenthal,* 40 Cal.4th at 62 (2006); *see also Dimeo,* 433 F.Supp.2d at 530 (Section 230 blocked defamation claim based on statements republished using an interactive computer service); *Batzel,* 333 F.3d at 1030 ("the language of § 230 (c)(1) confers immunity not just on 'providers' of such services, but also on 'users' of such services."); *Optinrealbig.com, LLC v. Ironport Systems*, Inc., 323 F.Supp.2d 1037 (N.D.Cal. 2004) (defendant protected where it "uses interactive computer services to distribute its on-line mailing and to post the reports on its website"); *Barrett v. Fonorow,* 799 N.E.2d 916, 923-24 (Ill. App. 2003) (individual poster of allegedly defamatory messages was ICS "provider or user"). The California Supreme Court went on to hold that an individual who republished a defamatory statement online was immune under CDA 230, even though she might have been liable if she republished the same statement offline. *Barrett v. Rosenthal,* 40 Cal.4th at 63.

■     Section 230 Immunity Applies to Sapient's Republication, via YouTube,
of the NOVA Documentary

As this Court has noted, immunity under Section 230 requires a court to find only three

facts present:  "First, the defendant must be a provider or user of an 'interactive computer

service.'  Second, the asserted claims must treat the defendant as a publisher or speaker of

information.  Third, the challenged communication must be 'information provided by another

information content provider.'" *Dimeo*, 433 F. Supp. 2d at 530; *see also Zeran*, 129 F.3d at 330

(same).

All three requirements are met here.  According to the Amended Complaint, Plaintiff

seeks to hold Sapient, i.e., a user of the interactive computer service YouTube, liable for

allegedly republishing material originally produced by a third party, i.e., NOVA.  Thus, under

Section 230, Counts I (and III, to the extent that it relies on the same activity) must be dismissed.

•     Sapient is a User of an Interactive Computer Service

There can be no serious dispute that Sapient is a user of the YouTube interactive

computer service ("ICS").  In its Amended Complaint, Plaintiff alleges that Sapient "did and for

a period commencing January 2007 digitally up-load upon the website pages of the domain name

www.youtube.com electronic images of the Film within a sequence of cinematographic images

entitled "James Randi exposes Uri Geller and Peter Popoff[.]"  Am. Compl. ¶ 10.

YouTube, in turn, is a "provider or user of an interactive computer service" within the

meaning of Section 230 because it is an "information service" that enables "multiple users" to

"access . . . a computer server" — specifically, to access the computer server that hosts the

13

YouTube website.  47 U.S.C. § 230(f)(2).  This Court has found that this is precisely the meaning of the statute:

> "[I]nteractive computer service" means, in relevant part, "any information service, system, or access software provider that provides or enables computer access by multiple users to a computer server . . . ."  § 230(f)(2) . . . .  Because it is a "service" that "enables computer access" by multiple users to a computer server, *see* 47 U.S.C. § 230(f)(2), [Defendant] Max's Web site is [an ICS]."

*Dimeo*, 433 F. Supp. 2d at 529-30.  The First Circuit recently reached the same conclusion:

> A web site . . . "enables computer access by multiple users to a computer server," namely, the server that hosts the web site.  Therefore, web site operators . . . are providers of interactive computer services within the meaning of Section 230.

*Universal Comm. Sys., Inc. v. Lycos, Inc,* .478 F.3d 413, 419 (1st Cir. 2007); *see also, e.g., Carafano v. Metrosplash.com, Inc.*, 339 F.3d 1119, 1123 (9th Cir. 2003); *Batzel*, 333 F.3d at 1030 (holding that an online newsletter and website were protected under the statutory definition of ICS); *Corbis v. Amazon.com*, 351 F. Supp. 1090, 1118 (W.D. Wash. 2004) (finding Amazon.com to be an ICS and thus immune from liability under Section 230).  Thus, Plaintiff's allegations establish the first element of the test for Section 230 immunity.

- The Complaint Treats Sapient as a Publisher or Speaker of the Video He Posted to YouTube.

Plaintiff's transitory tort (British copyright) claims against Sapient squarely meet the second criterion for Section 230 immunity because they arise from Sapient's alleged republication of the NOVA Segment on YouTube, as does its appropriation of name or likeness claim to the extent that it arises from the same republication.  Am. Compl. ¶ 10-11, 15, 19-20 (alleging violations based on Sapient's "uploading" of NOVA Segment).  Thus, Plaintiff's allegations also establish the second element of the test for Section 230 immunity.

14

- The Information at Issue was Provided by NOVA, Another Information Content Provider.

Finally, Sapient's use also satisfies the final element of the Section 230 test: that the allegedly unlawful material be provided by another "information content provider." Section 230 defines "information content provider" as "any person or entity that is responsible, in whole or in part, for the creation or development of information provided through the Internet or any other interactive computer service." 47 U.S.C. § 230(f)(3). As the original creator of the NOVA Documentary, NOVA qualifies as an "information content provider" for the video at issue within the meaning of Section 230(f)(3). Specifically, Plaintiff's Complaint alleges that Sapient copied and uploaded the NOVA Segment, but in no way alleges that he created or developed it. Am. Compl. ¶ 10. Instead, it is clear from the Complaint and Defendant's RJN that NOVA was responsible in whole for the creation and development of the NOVA Segment. *Compare* NOVA Segment, *available at* http://www.youtube.com/watch?v=M9w7jHYriFo, and RJN Ex. A.[7] Thus, there is no dispute that the basis of Counts I and III is the republication of the NOVA Segment, information that was provided by another information content provider.

In sum, Plaintiff seeks to hold Sapient liable for his republication, via an interactive computer service, of a video clip created and provided by another information content provider. As such, Counts I (and III, to the extent that it relies on the same activity) are barred by Section 230's absolute immunity.

---

[7] While Plaintiff does not allege this fact in the complaint, the Court may take judicial notice of it because it is a fact "capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201(b)(2).

- ■    None of Section 230's Exceptions Apply to Plaintiff's State and Foreign
  Intellectual Property Claims.

While Section 230's absolute immunity is broad, there are a few narrow exceptions for

violations of federal privacy, criminal, and intellectual property laws. *See* 47 U.S.C. 230(e)

(exceptions for causes of action based on violations of Electronic Communications Privacy Act

and criminal and federal intellectual property laws); *Perfect 10 v. CCBill,* 481 F.3d 751, 767 (9th

Cir. 2007) (holding that the "intellectual property" exemption for Section 230 only applies to

United States federal intellectual property claims).[8] However, none of Plaintiff's claims fall

within these exceptions. On their face, none of the claims in Plaintiff's Amended Complaint

assert violations of federal criminal or privacy laws. And as Plaintiff has explicitly pled his

British copyright and appropriation of likeness claims under foreign and state laws, they too fail

to qualify for any exemptions under 230(e).[9]

These narrow and limited exemptions make perfect sense given the speech-protective

policy Congress established with Section 230. As the Ninth Circuit cogently explained in *Perfect*

*10 v. CCBill,* "[w]hile the scope of federal intellectual property law is relatively well established,

state laws protecting 'intellectual property,' however defined, are by no means uniform." *Id.*

Subjecting ICS providers and users to the myriad and potentially conflicting state and

---

[8] While the Eleventh Circuit has also faced the issue of whether Section 230 exposes providers
and users of interactive computer services to all intellectual property claims or only federal
intellectual property claims, that court declined to address the question. *Almeida v. Amazon.com,*
456 F.3d 1316, 1324 (11th Cir. 2006) ("we do not reach any of Almeida's challenges to the
district court's application of the CDA here.")

[9] Under Pennsylvania law, "misappropriation of name or likeness" claims arise from privacy
law. *Marks v. Bell Tel. Co. of Pa.,* 33 A.2d 424, 430 (Pa. 1975). As such, the claim is not an
intellectual property claim that even arguably is subject to Section 230's exception.
Nevertheless, as explained herein, even if this Court were to treat it like an intellectual property
claim, it is barred.

international regimes would drastically curtail the broad protections Section 230 was intended to provide:

> Because material on a website may be viewed across the Internet, and thus in more than one state at a time, permitting the reach of any particular state's definition of intellectual property to dictate the contours of this federal immunity would be contrary to Congress's expressed goal of insulating the development of the Internet from the various state-law regimes.

*Id.* at 768, *reaffirmed at*, 2007 WL 1557475 ("An entity otherwise entitled to Section 230 immunity would thus be forced to bear the costs of litigation under a wide variety of state statutes that could arguably be classified as 'intellectual property.' [This] would fatally undermine the broad grant of immunity provided by the CDA.").

This policy is particularly important in light of Plaintiff's attempt to claim a "transitory tort" based on foreign copyright claims. *See* Section C below (discussing untested and inapplicable theory of transitory torts for U.S.-based conduct). Similar to the Ninth Circuit's concern over so-called state intellectual property claims, foreign intellectual property claims can also vary widely by jurisdiction and definition, not to mention language and culture. To subject providers and users of interactive computer services to liability under these laws in U.S. courts would undermine "Congress's expressed goal of insulating the development of the Internet from the various [non-federal]-law regimes." *Id.* at 12. Thus, Plaintiff cannot state a claim under foreign or state law for republishing the NOVA Segment that is not and will not be barred by Section 230.

**b.    Any Judgment Against Sapient on Foreign Copyright Grounds Would Offend the First Amendment and Be Repugnant to Public Policy**

Plaintiff's British copyright claims must also be dismissed because their enforcement would conflict with this Court's duty to uphold the principles of the First Amendment and

United States copyright law's fair use doctrine. As explained in detail below, the disputed activity at issue is a classic fair use and, therefore, noninfringing under U.S. law.  17 U.S.C. § 107.  Explorologist has attempted to sidestep Sapient's right to make a fair use of the Hughes Excerpt by bringing its claims under a foreign law that does not recognize fair use or the First Amendment principles the fair use doctrine embodies.  *See Eldred v. Ashcroft*, 537 U.S. 186, 220 (2003) (holding that First Amendment protections against overbroad application of copyright law are found in the fair use doctrine).  Plaintiff's attempt must fail.

■    Courts May Not Enforce Judgments Repugnant to the First Amendment

In diversity cases, enforceability of foreign judgments is governed by the law of the state in which enforcement is sought. *Choi v. Kim,* 50 F.3d 244, 248 (3d Cir. 1995); *Somportex Ltd. v. Philadelphia Chewing Gum Corp.,* 453 F.2d 435, 440 (3d Cir. 1971), *cert. denied*, 405 U.S. 1017 (1972).

In Pennsylvania, as elsewhere, it is well established that courts will not enforce a foreign judgment if "the cause of action on which the judgment was based, or the judgment itself, is *repugnant to the public policy* of the United States or of the State where recognition is sought[.]" RESTATEMENT § 482(2)(d) (emphasis added); *see also* RESTATEMENT (SECOND) OF THE CONFLICT OF LAWS §  117 cmt. c (1971) ("[E]nforcement will usually be accorded [a] judgment [of a foreign court] except in situations where the original claim is repugnant to fundamental notions of what is decent and just in the State where enforcement is sought."); *Hilkmann v. Hilkmann,* 579 Pa. 563, 575 (2004) (observing that the Restatement's repugnancy standard has been incorporated into Pennsylvania common law); *Leo Feist, Inc. v. Debmar Pub. Co.*, 232 F. Supp. 623, 624 (D.C. Pa. 1964) (foreign judgments not recognized where "there is a countervailing policy of the United States").

It is equally well established that foreign judgments that would violate the First

Amendment are repugnant to public policy. *Sarl Louis Feraud Int'l v. Viewfinder Inc.*, 2007 WL

1598057 (2d Cir., June 5, 2007) (holding that United States courts should not enforce foreign

copyright judgments that violate the First Amendment, including the fair use doctrine); *Yahoo!*

*Inc. v. La Ligue Contre Le Racisme Et L'Antisemitisme*, 169 F.Supp.2d 1181 (N.D. Cal. 2001)

(holding unenforceable French judgment rendered under law prohibiting Nazi propaganda

because such law would violate the First Amendment), *rev'd on other grounds*, 433 F.3d 1199

(9th Cir. 2006).

Further, given Pennsylvania's strong constitutional protections for free speech, any

judgment that would impinge on those protections would be particularly offensive to the

Commonwealth. *Com., Bureau of Prof. and Occupational Affairs v. State Bd. of Physical*

*Therapy*, 556 Pa. 268, 343-44 (1999) (Pennsylvania constitution provides protection for freedom

of expression that is broader than First Amendment free speech guarantee); *see also Kramer v.*

*Thompson,* 947 F.2d 666, 678 (3d Cir. 1991) (noting "the extraordinary reverence and solicitude

with which the Commonwealth of Pennsylvania has viewed the right of free expression, tracing

back to the experiences in England of its founder William Penn and carried forward in the

Commonwealth's various Constitutions . . . It is notable that these provisions are far more

expansive than the First Amendment to the United States Constitution.") (footnotes omitted).

- <u>A Judgment That Punishes Sapient's Constitutionally-Protected Fair Use Would Offend the First Amendment</u>

The fair use doctrine creates a "breathing space within the confines of copyright,"

*Campbell v. Acuff-Rose Music, Inc.*, 510 U.S. 569, 578 (1994), that helps ensure that the

copyright monopoly does not unduly impinge on free expression. Thus, it represents an essential

Constitutional safeguard for free speech. *See Eldred v. Ashcroft*, 537 U.S. 186, 219 & 221 n.24 (2003) ("copyright law contains built-in First Amendment accommodations . . . [including] the 'fair use' defense" . . .[I]t is appropriate to construe copyright's internal safeguards to accommodate First Amendment concerns."); *Twin Peaks Prods., Inc. v. Publ'ns Int'l, Ltd.*, 996 F.2d 1366, 1378 (2d Cir. 1993) ("the fair use doctrine encompasses all claims of first amendment in the copyright field."). *see also generally* Stephen M. McJohn, *Eldred's Aftermath: Tradition, the Copyright Clause, and the Constitutionalization of Fair Use,* 10 MICH. TELECOMM. & TECH. L. REV. 95 (2003).

The Third Circuit Court of Appeals has recognized the intimate connection between the First Amendment and fair use, noting that "[t]he spirit of the First Amendment applies to the copyright laws [such] that the courts should not tolerate any attempted interference with the public's right to be informed regarding matters of general interest when anyone seeks to use the copyright statute which was designed to protect interests of quite a different nature." *Video Pipeline, Inc. v. Buena Vista Home Entm't, Inc.* 342 F.3d 191, 311 (3d Cir. 2003) (citing *Rosemont Enters., Inc. v. Random House, Inc.*, 366 F.2d 303 (2d Cir. 1966)).

In light of this intimate connection, any judgment that would offend the fair use doctrine is equally offensive to the First Amendment and, therefore, repugnant to both public policies. *See Sarl Louis Feraud Int'l,* 2007 WL 1598057 at *3 ("Foreign judgments that impinge on First Amendment rights will be found to be "repugnant" to public policy."); *see also Bachchan v. India Abroad Publ'ns, Inc.,* 154 Misc. 2d 228, 253 (N.Y. Sup. Ct. 1992) (declining to enforce libel ruling of English court that was repugnant to First Amendment); *Abdullah v. Sheridan Square Press, Inc.*, No. 93 Civ. 2515, 1994 WL 419847, at *1 (S.D.N.Y. May 4, 1994) (same); *Telnikoff v. Matusevitch,* 347 Md. 561, 602 (Md. Ct. App. 1997), *aff'd*, 159 F.3d 636 (D.C. Cir.

1998) (rejecting enforcement of English libel judgment under Maryland's similar statutory and constitutional provisions).

■     Sapient's Use Was A Self-Evident Noninfringing Fair Use

The use disputed here—eight seconds of footage, re-contextualized in a broader work of criticism—is a classic fair use sheltered by Section 107 of the U.S. Copyright Act.[10] As a general matter, Plaintiff's own allegations, particularly viewed in conjunction with the actual video at issue, demonstrate that Sapient used the NOVA Segment—as NOVA used the Hughes Excerpt—to foster criticism and comment on Uri Geller and his Explorologist company. Section 107 expressly endorses this type of use, to help ensure that copyright law does not "stifle the very creativity which that law is designed to foster." *Campbell*, 510 U.S. at 577 (quoting *Stewart v. Abend*, 495 U.S. 207, 236 (1990)); 17 U.S.C. § 107 ("the fair use of a copyrighted work . . . for purposes such as criticism, comment, [and] news reporting . . . is not an infringement of copyright").

Beyond this broad purpose, the specific use at issue falls squarely within Section 107's fair use parameters. Courts consider at least four factors in determining whether a particular use is a noninfringing fair use:

(1)     the purpose and character of the use, including whether such use is of a commercial nature or is for nonprofit educational purposes;

(2)     the nature of the copyrighted work;

---

[10] Sapient is aware that it is unusual to rule on fair use in the context of a motion to dismiss. However, courts are not forbidden from determining whether such a ruling is appropriate given the allegations in the Complaint. *See, e.g. Gregerson v. Vilana*, 446 F. Supp. 2d 1053 (D. Minn. 2006) (considering fair uses factors, over Plaintiff's objection, on motion to dismiss). That consideration is appropriate here, because even limited to the allegations in the Complaint and the minimal factual findings in Defendant's RJN, and taking all reasonable inferences in Plaintiff's favor, it is clear that Sapient's use was a fair use.

(3)    the amount and substantiality of the portion used in relation to the copyrighted
       work as a whole; and

(4)    the effect of the use upon the potential market for or value of the copyrighted
       work.

17 U.S.C. § 107.[11]  Each of these factors favors Sapient.

- The Purpose and Character of the Use

Under the first factor, when the use at issue is a "transformative use," it is entitled to

particularly broad fair use protections; as the Supreme Court has put the matter:

> [Transformative] works . . . lie at the heart of the fair use doctrine's guarantee of
> breathing space within the confines of copyright, . . . the more transformative the
> new work, the less will be the significance of other factors, like commercialism,
> that may weigh against a finding of fair use.

*Id.* at 579.

The use at issue in this case is highly transformative. Transformative uses are those that

do not merely replicate the material from which they borrow but provide new insight or

understanding of the material that the original does not. Here, the NOVA Segment does not seek

to replicate or supersede the 1987 Geller performance, including the Hughes Excerpt, but rather

to comment upon it as part of its overall critique of Geller and his abilities.  By uploading the

NOVA Segment to YouTube, Sapient himself was making such transformative commentary and

criticism as well.   Such activity is classic  fair use. *See Suntrust Bank v. Houghton Mifflin Co.*,

268 F.3d 1257, 1271 (11th Cir. 2001) (doctrine of fair use allow critics to "conscript[] elements

from [the original work] to make war against it."); *see also Campbell* 510 U.S. at 581-82

---

[11] These four factors are not exclusive; courts must also consider the public interest in the
expression at issue. Nimmer on Copyright, § 13.05[B][4] ("the public interest is also a factor that
continually informs the fair use analysis."); *see also Sony v. Universal*, 464 U.S. 417, 431-32
(Thus, "courts are more willing to find a secondary use fair when it produces a value that
benefits the broader public interest.").

(approving use of elements from Roy Orbison's "Pretty Woman" as part of a song intended to comment on the original).

- The nature of the copyrighted work

Under the second factor, Courts usually afford creative works more protection than works of fact because creative works are at "the core of intended copyright protection." *Campbell,* 510 U.S. at 586. In this case, the eight-second clip is entirely factual. It is merely a static recording of a brief statement at a public event. Therefore, this factor also favors Sapient.

- The amount and substantiality of the portion used.

The third factor – "amount and substantiality" – considers both the quantity and importance of the material used, *See id.*

The use at issue here is both minimal and necessary. The eight seconds in dispute depict a brief introduction to a main event, as well as a quick shot of the audience for the event—just enough to help provide some minimal background about Geller's alleged accomplishments.[12] Despite its brevity, however, the eight-second clip provides an important set up for the rest of the video's critique – that Geller claims to have psychic abilities and an affinity for altering metal objects. The Hughes Excerpt is one of the smallest and most minimal ways of making this point. Thus, the third factor favors Sapient.

---

[12] Indeed, the documentary could have shown more, if necessary to serve the intended purpose. *See Mattel, Inc. v. Walking Mountain Prod.,* 353 F.3d 792, 803 n.8 (9th Cir. 2003) (holding that "entire verbatim reproductions are justifiable where the purpose of the work differs from the original.").

- The effect on the market or potential market.

Finally, the use of the eight-second snippet at issue here cannot conceivably cause any harm to the market for the copyrighted work—or at least any harm that is cognizable under copyright law. Indeed, it is difficult to imagine what licensing market might possibly exist for the introduction to a film documenting a Geller performance that took place two decades ago. "A use that has no demonstrable effect upon the potential market for, or the value of, the copyrighted work need not be prohibited in order to protect the author's incentive to create." *See Sony,* 464 U.S. at 450. Moreover, courts have found that critical transformative uses rarely if ever supplant markets for the original material, in part because copyright owners are generally not eager to invite criticism of their works or practices. *See Campbell,* 510 U.S. at 592; *Sony Computer Entm't v. Connectix Corp.,* 203 F.3d 596, 607 (9th Cir. 2000) (transformative work less like to cause adverse impact on potential market for original work) (citing *Campbell,* 510 U.S. at 591; *Harper & Row,* 471 U.S. at 567-69). Here, the only "harm" that might be caused by the use is that viewers of the NOVA piece, thus informed of challenges to the validity of Geller's claims, might be more skeptical of those claims. But that is not a harm copyright law can or should redress. *See Online Policy Group v. Diebold, Inc.,* 337 F. Supp. 1195, 1203 (N.D. Cal. 2004) ("[The fair user's] activity might have reduced [the copyright owner]'s profits because it helped inform potential customers of problems with [the owner's product]. However, copyright law is not designed to prevent such an outcome.").

Moreover, in analyzing this factor, courts must consider "the benefit the public will derive if the use is permitted" and weigh that against "the personal gain the copyright owner will receive if the use is denied." *MCA, Inc. v. Wilson,* 677 F.2d 180, 183 (2d Cir. 1981); *see also Am. Geophysical Union v. Texaco, Inc.,* 60 F.3d 913, 922 ("Courts are more willing to find a secondary use fair when it produces a value that benefits the broader public interest"). Thus,

"[t]he less adverse effect that an alleged infringing use has on the copyright owner's expectation of gain, the less public benefit need be shown to justify the use." *MCA, Inc.*, 677 F.2d at 183.

Here, the public benefit of sharing the NOVA Segment is substantial. NOVA and Sapient are fostering critical debate about assertions of paranormal abilities (by Geller and others), the history and context of those claims in the United States and around the world, and the limits of rationality. Fostering that vibrant debate is of quintessential public value. *Mattel*, 353 F.3d at 806 ("the public benefit in allowing . . . social criticism to flourish is great.").

In sum, no U.S. court could render an enforceable judgment against Sapient on the copyright claims because that judgment would be repugnant to the fair use doctrine and the First Amendment. The Court should decline Plaintiff's invitation to enter what must amount to advisory opinion and dismiss Count I of Plaintiff's Complaint now, with prejudice.

### c. Foreign Copyright Claims For Transitory Torts Are Not Generally Recognized in United States Courts, Especially When Defendant's Conduct Occurs Entirely Within the United States

Traditionally, subject matter jurisdiction over copyright lawsuits is limited to the country where the alleged infringement of the copyright took place. *See Itar-Tass Russian News Agency v. Russian Kurier*, 153 F.3d 82, 91 (2d Cir. 1998) (U.S. law applies to infringement issues where infringement allegedly occurred in U.S.). Here, however, Plaintiff attempts to circumvent this limitation by alleging jurisdiction over British copyright claims under 28 U.S.C. 1332(a) because, even though Sapient's conduct took place entirely in the United States, one or more individuals allegedly living in the United Kingdom requested transmission of the NOVA Segment to them from the YouTube service. That theory does not suffice to establish the jurisdiction of this Court.

Federal courts have been reluctant to accept subject matter jurisdiction over the foreign copyright claims. *See, e.g. ITSI T.V. Prod. v. Agric. Ass'ns.*, 785 F. Supp. 854, 866 (discerning "no clear authority for exercising" jurisdiction over foreign copyright claims) *aff'd in part, rev'd in part on other grounds*, 3 F.3d 1289 (9th Cir. 1993). As the *ITSI* court cautioned: "American courts should be reluctant to enter the bramble bush of ascertaining and applying foreign law without an urgent reason to do so." *ITSI T.V. Prod.*, 785 F. Supp. at 866. Such caution is warranted here, where a plaintiff calls on foreign law in a barely concealed effort to avoid the sovereign protections of United States law. As set forth above, Sapient is entitled to protection in the United States for his republication of the NOVA Segment under Section 230 of the Communications Decency Act and pursuant to the Fair Use doctrine and the First Amendment. Allowing Plaintiff to bring British claims sets up an inevitable conflict with these laws—something this Court should avoid.

Moreover, copyright experts have sharply criticized courts that have accepted jurisdiction over foreign copyright claims for relying on an improper basis for such jurisdiction: the disputed notion that copyright infringement is a transitory tort, *i.e.*, a personal right that travels with the alleged infringer, rather than a property right. *See London Film Prods, Ltd. v. Intercontinental Comms., Inc.*, 580 F. Supp. 47 (S.D.N.Y. 1984) (accepting jurisdiction over British copyright claim under a transitory tort theory that "appears sound in the absence of convincing objections by defendant to the contrary); *see also Armstrong v. Virgin Records*, 91 F. Supp. 2d 628 (S.D.N.Y. 2000) (no absolute bar to jurisdiction over unspecified international copyright claims brought by British citizen); *Frink Am. Inc. v. Champion Road Machinery Ltd.*, 961 F. Supp. 398, 404-05 (N.D.N.Y. 1997) (finding subject matter jurisdiction over Canadian copyright claims).

26

This controversial theory has been characterized as both unfair to U.S. defendants and inappropriate under U.S. and international copyright doctrine. As leading copyright commentator William Patry has explained, copyrights are, in fact, not personal rights but rather intangible property rights:

> Copyright is not a personal right which attaches to the individual and follows him or her wherever the individual travels. Instead, it is a territorially derived property right which exists by virtue of a national grant. Whether another nation decides to grant a similar property right is a matter for the legislation in each nation. Transitory torts are personal rights, not property rights. This characterization confuses the incorporeal nature of the copyright property right with personal rights; the two are quite different and the consequences quite different. As a property right rather than a personal right, copyright cannot be a transitory tort.

*See* William Patry, *Copyright is Not a Transitory Tort*, http://williampatry.blogspot.com/2006/05/copyright-is-not-transitory-tort.html (last visited June 11, 2007); *see also* William Patry, *Choice of Law and International Copyright*, 48 AM. J. COMP. L. 383, 467-68 (2000); David R. Toraya, *Note, Federal Jurisdiction Over Foreign Copyright Claims: An Unsolicited Reply to Professor Nimmer*, 70 CORNELL L. REV. 1165 (1985).

Indeed, careful application of copyright law's traditional territorial limitations is especially appropriate where, as here, all of Defendant's allegedly infringing activities occurred within the United States. *See* Am. Compl., ¶¶ 10-11. By contrast, in the main cases in which courts have accepted jurisdiction, substantial portions of the infringing activity occurred on foreign soil. *See, e.g., Murray v. BBC,* 81 F.3d 287, 289, 293 (1996) (British costume designer sued British corporation and U.S. subsidiary for use of copyrights work in U.K. and U.S.); *London Film,* 580 F. Supp. at 48 (U.S. Corporation licensed copyrighted work that was originally produced and distributed by U.K. corporation to distributors in numerous foreign countries); *Armstrong,* 91 F. Supp. 2d at 631 (American company was licensee and distributor in America of U.K.-copyrighted work); *Frink,* 961 F. Supp. at 400-01 (American company

transferred disputed intellectual property to Canadian subsidiary). Thus, no U.S. court has ever found jurisdiction over foreign copyright claims under the facts presented here; nor should this Court be the first.

In sum, Plaintiff relies in Count I on a highly disfavored "transitory tort" theory that no court has found sufficient for jurisdiction on the facts alleged here. This Court should follow the *ITSI* court and Professor Patry's lead and reject subject matter jurisdiction over Plaintiff's foreign copyright claims.

      d.      **Explorologist Cannot Use Foreign Copyright Law to Hold Sapient Liable for Allegedly Reproducing the Work in the United States.**

Even if subject matter jurisdiction were present and Plaintiff's claims were not barred by Section 230, fair use, and the First Amendment, they would *still* fail. Explorologist's first allegation for "reproduction" of the Hughes Excerpt, *see* Am. Compl. ¶11(a), must be dismissed with prejudice because U.K copyright law cannot apply to the challenged activity as pled.

According to Plaintiff's Complaint, Brian Sapient is a resident of the United States, allegedly "doing business" here as a member of the Rational Response Squad, including, according to Plaintiff, the business of the alleged infringing conduct at issue. *See* Am. Compl. ¶ 2. Because this allegedly infringing activity took place entirely in the United States, the United States is the protecting country and its law governs the actionability of the activity. *See Itar-Tass Russian News Agency v. Russian Kurier*, 153 F.3d 82, 91 (2d Cir. 1998) (U.S. law applies to infringement issues where infringement allegedly occurred in U.S.); *Bridgeman Art Library, Ltd. v. Corel Corp.,* 25 F. Supp. 2d 421, 426, *reconsidered*, 36 F. Supp. 2d 191 (S.D.N.Y. 1999) ("whether an infringement has occurred in the United States is a matter of United States law."); Paul Goldstein, *Goldstein on Copyright*, 3d Ed. § 18.2.1.1 (2006) ("the law of the protecting

28

country—the country where the work is being exploited without the copyright owner's authority, will as a rule govern whether . . . the rights alleged to be infringed are protected by copyright . . .[for example] if X's scholarly article, first published in the United States, is reproduced without X's authority in France, X's rights, and the exceptions to those rights will be determined under French law."); Paul Goldstein, *International Copyright* § 3.3.2.1 (2001) ("to apply the law of country A to an alleged infringement in country B would, it is widely believed, violate the principle of territoriality by exporting the law of one country to the territory of another."). Indeed, even British law acknowledges that it has no jurisdiction over acts such as those alleged here when committed in other countries. *See* Appendix of Foreign Law ("Appndx."), Ex. 1. (COPINGER AND SKONE JAMES ON COPYRIGHT I, § 22-116 (Kevin Garnett et al. eds., 15th ed. 2005) (U.K. copyright law generally does not apply to acts committed outside of the United Kingdom)).

Indeed, even Congress has spoken on this issue, buttressing these basic territoriality principles with the preemptive power of Section 301 of the Copyright Act, which provides:

> all legal or equitable rights that are equivalent to any of the exclusive rights within the general scope of copyright as specified by section 106 . . . are governed exclusively by this title.

17 U.S.C. § 301(a). Section 301 specifically anticipates and disposes of the application of foreign law to purely U.S. activities, noting that: "The scope of Federal preemption under this section is not affected by the adherence of the United States to the Berne Convention or the satisfaction of obligations of the United States thereunder." *Id.; see also Bridgeman,* 36 F. Supp. 2d at 193 ("it now is clear that the treaty power is subject to the constitutional limitations that apply to all exercises of federal power.") (internal quotations omitted).

29

In its Complaint, Explorologist explicitly alleges that Sapient violated its British copyright by making a reproduction of its video footage in the United States. Am. Compl. ¶ 11(a). Section 106(1) of the U.S. Copyright Act specifically entitles owners of copyrighted works to the exclusive right of reproduction within the United States. 17 U.S.C. § 106(1). Thus, Explorologist's claim to the legal and equitable right to control reproduction in the United States under British law is equivalent to the exclusive right of Section 106(1) and must be preempted under Section 301.

Thus, to the extent that Count I relies on an alleged violation of Explorologist's reproduction right, the claim fails under U.S., British and international law.

### e. Explorologist Has Not And Cannot State A Cause Of Action Under British Copyright Law For Making The Hughes Excerpt Available To The Public

- Sapient Did Not Communicate the Work to the Public

Next, Explorologist alleges that Sapient violated its British copyright by "causing the Film . . . to be seen and heard in public in the United Kingdom." Am. Compl. ¶ 11(b). While no specific U.K. provision forbidding the act is cited, the relevant provision is Section 20 of the 1988 Copyright Designs and Patents Act ("CDPA"), which, as amended in 2003, granted copyright holders the exclusive right to "communicate" the work to the public. *See* Appndx., Ex. 2 (CDPA 1988 s.20(2)). As amended in 2003, the right specifically encompasses making a work available to the public by electronic means "in such a way that members of the public may access it from a place and time individually chosen by them." *Id.*

According to the leading British copyright treatise, however, liability for an alleged violation of the right to communicate depends on whether the defendant himself has made the work available to British citizens directly from his own computer, as opposed to, for example, supplying the work to a provider like YouTube, which in turn makes the work available through

its own computer servers. *See* Appndx., Ex. 1 (COPINGER AND SKONE JAMES ON COPYRIGHT I,

§§ 7-114, 7-115 (Kevin Garnett et al. eds., 15th ed. 2005)). "[W]here A makes the work

available to B, an internet service provider, so that B can make it available to the public [by

electronic transmission] *it is the act of B* in making it available by electronic transmission such

that the public can access it which is the restricted act." *Id.* (emphasis added). Thus, *Sapient's*

act of uploading a video to YouTube, even if it contains material that could violate British

copyright law, did not violate Explorologist's exclusive right to communicate. On the facts of

the Complaint, only *YouTube's* act of making that video available so that persons in the U.K. can

access and play it could potentially violate such a right.

Thus, even under U.K. law, Sapient is not liable for the actions as pled in the Amended

Complaint.

- ### Sapient's Use is Not a Substantial Taking under British Law

Finally, even if Sapient were a proper defendant, Explorologist's copyright claim would

*still* have to be dismissed under British law because it has not alleged an essential element of a

British copyright violation: that a substantial taking of the work has occurred.

The test for whether copying a work constitutes a "substantial taking" for purposes of

infringement examines whether the infringer has incorporated a substantial part of the

independent skill, labor and judgment contributed by the original author in producing the

copyrightable elements of the work, Appndx., Ex. 1 (COPINGER AND SKONE JAMES ON

COPYRIGHT I, §§ 7-114, 7-115); and Ex. 3 (*Designers Guild Ltd v Russell Williams (Textiles) Ltd*

[2001] 1 WLR 2416 ). Specifically, a court must ask, "what are the features of the claimant's

work which made it an original work and thus give rise to its protection . . . [and] if a substantial

use has been made of those features." *Id.*

The taking alleged here falls far short of this standard. Sapient allegedly "took" just eight seconds of an introduction to a public performance. Those eight seconds encompass a brief shot of Dr. Hughes and equally brief shot of the audience. That is all. Thus, the quantity is miniscule. With respect to the quality of alleged "taking," that analysis depends on its significance to the underlying original work. Appndx., Ex. 1 (COPINGER AND SKONE JAMES ON COPYRIGHT I at § 7-27(b) (citing cases)); *Ladbroke Ltd. v. William Hill Ltd.* [1964] 1 W.L.R. 273 at 283, Appndx., Ex. 4. As a general matter, however, it is inconceivable to think that these few seconds were a significant part of the film from which the Hughes Excerpt was taken, as that film almost certainly focused on the Geller performance itself and not this brief introduction.

The alleged taking was insignificant in both quantity and quality. It is simply not actionable under U.K. law.

### f.    Explorologist Has Not and Cannot State a Cause of Action for Commercial Disparagement

In Count II of the Complaint, Explorologist claims Sapient commercially disparaged it by allegedly uploading a video (in March 2007) in which Sapient allegedly "accused Plaintiff of being a dummy or sham corporation and accused Uri Geller of being a professional con man and fraud and other criminal or immoral acts." Am. Compl. at ¶13. Assuming these allegations to be true, Plaintiff's claim of commercial disparagement fails because it has failed to plead actual pecuniary loss. *See Forum Publ'ns, Inc. v. P.T. Publishers Inc.,* 700 F. Supp. 236, 243-44 (E.D. Pa 1988) ("'the necessity of pleading and proving special damages has been an integral part of the action for disparagement of property since the actions first developed . . .'") (quoting *Testing Systems Inc. v. Magnaflux Corp.*, 251 F. Supp. 286 (E.D. Pa. 1988).

32

Specifically, this Court requires that any plaintiff claiming commercial disparagement must allege either (a) the loss of particular customers by name, or (b) a general diminution in its business, and extrinsic facts showing that such special damages were the natural and direct result of defendant's actions. *KBT Corp. v. Cerdian*, 966 F. Supp. 375 (E.D. Pa. 1997). To advance the latter loss theory, Explorologist must allege facts illustrating an established business, the amount of sales for a substantial period of time preceding the publication, the amount of sales subsequent to the publication *and* demonstrate that it is incapable of alleging the names of particular customers who no longer frequent the business. *Id.* Explorologist's general loss allegations do not attempt, must less come anywhere near, meeting this standard. *See* Am. Compl. ¶ 18. In fact, Explorologist's Amended Complaint does not even specify the business of the company, other than the amorphous statement that "the Plaintiff manages, promotes and sells Uri Geller related intellectual property." Am. Compl. ¶ 15. Thus, the disparagement claim is insufficient on its face, and must be dismissed. *See KBT*, 966 F. Supp. at 375; *see also Forum Pub'ls,* 700 F. Supp. at 244 (statement that plaintiff suffered damages resulting in loss of greater that $75,000 "clearly does not satisfy the Pennsylvania rule requiring the pleading of special damages in disparagement actions").

g.    **Explorologist Cannot State a Cause of Action for Appropriation of Name and Likeness**

As noted in Section A above, Explorologist's appropriation claim is barred under Section 230 to the extent that it is based on Sapient's alleged republication of the NOVA Segment. To the extent that the claim is based on other activities, Explorologist has not alleged and cannot allege that Sapient has used Geller's name or likeness for Sapient's commercial benefit. Not only has Explorologist failed to identify any commercial benefit Sapient might have received

33

through the use of Geller's name and/or likeness; its own allegations demonstrate that Sapient

cannot have sought such a benefit. Explorologist claims that Sapient has done the opposite—that

he has criticized Geller and attempted to "dishonor" him. It defies reason to conclude that this

"dishonoring" also implies some kind of endorsement by Geller of Sapient's work.

Indeed, if Explorologist's theory of the case were correct, any public figure could sue her

critics for using her name or likeness in a critique. The Restatement of Torts addresses this

precise issue:

> The value of the plaintiff's name is not appropriated by mere mention of it, or by
> reference to it in connection with legitimate mention of his public activities; nor is
> the value of his likeness appropriated when it is published for purposes other than
> taking advantage of his reputation, prestige, or other value associated with him,
> for purposes of publicity.  . . .  It is only when the publicity is given for the
> purpose of appropriating to the defendant's benefit the commercial or other values
> associated with the name or the likeness that the right of privacy is invaded.

RESTATEMENT (SECOND) OF TORTS § 652(C) illus. 8d. In fact, Pennsylvania courts have

expressly rejected the notion that the misappropriation tort could be used to hold publishers

liable for commenting on public figures. *See Seale v. Gramercy Pictures*, 949 F.Supp. 331, 336-

37 (E.D. Pa. 1996) (noting that Pennsylvania Supreme Court recognized that no liability exists

under Section 652(C) in connection with unauthorized publication of magazine article about

public figure); *see also Borton v. Unisys Corp.*, Civ. A. No. 90-4793, 1991 U.S. Dist. LEXIS 93,

at *29-*30 (E.D. Pa. Jan. 4, 1991) (finding no misappropriation because likeness was

not published for purposes of taking advantage of plaintiff's reputation, prestige or other value

associated with plaintiff).

Because Explorologist's own Complaint demonstrates its failure to plead a sufficient

claim. Count III must be dismissed.

5.    **CONCLUSION**

For the reasons stated above, Sapient respectfully requests that this Court dismiss

Plaintiff's Amended Complaint with prejudice.

Respectfully submitted,

Chad Cooper (Pa. I.D. No. 90067)
Samuel W. Silver (Pa. I.D. No. 56596)
SCHNADER HARRISON SEGAL & LEWIS LLP
1600 Market Street, Suite 3600
Philadelphia, PA  19103-7286
(215) 751-2269; (215) 751-2309

*Attorneys for Defendant,*
*Brian Sapient*

Dated:  June 11, 2007

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on this 11th day of June, 2007, a true and correct copy of the foregoing Defendant's Motion to Dismiss Pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6) was served electronically, by way of the Court's electronic case filing system, and by First Class U.S. Mail, postage prepaid, addressed as follows:

Alan L. Frank
Alan L. Frank Law Associates PC
8380 Old York Road
Suite 410
Elkins Park, PA 19027

Richard Winelander
1005 North Calvert St
Baltimore, MD 21202

Chad Cooper