## UNITED STATES DISTRICT COURT FOR THE
## EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| EXPLOROLOGIST LIMITED | ) | |
| | ) | |
| Plaintiff | ) | **CIVIL ACTION** |
| v. | ) | |
| | ) | **No. 07-1848** |
| BRIAN SAPIENT | ) | |
| aka BRIAN J. CUTLER | ) | |
| Defendant | ) | |

### *OPPOSITION TO MOTION TO DISMISS*

The Plaintiff, EXPLOROLOGIST LIMITED, by and through its attorneys, Richard Winelander, Alan L. Frank, and Alan L. Frank Law Associates, P.C., respectfully requests that this Honorable Court deny the "Motion to Dismiss" filed by BRIAN J. CUTLER aka BRIAN SAPIENT individually and doing business as the Rational Response Squad. Plaintiff hereby adopts and incorporates by reference the attached Brief in Opposition to Cutler's Motion to Dismiss.

WHEREFORE, the Plaintiff having answered the Defendant's Motion to Dismiss respectfully requests that this Honorable Court deny it.

Respectfully submitted,
EXPLOROLOGIST LIMITED
By and Through Counsel,


/s/
_____
Richard Winelander, Esquire
1005 North Calvert Street
Baltimore, MD 21202
rw@rightverdict.com
410.576.7980
Fax:  410.385.2023

and

1

Dockets.Justia.com

/s/
By: _____
Alan L. Frank Law Associates, P.C.
8380 Old York Road, Suite 410
Elkins Park, PA 19027
afrank@alflaw.net
215.935.1000
Fax:   215.935.1110

Attorneys for Plaintiff

## UNITED STATES DISTRICT COURT FOR THE
## EASTERN DISTRICT OF PENNSYLVANIA

| | | | |
|---|---|---|---|
| EXPLOROLOGIST LIMITED | ) | | |
| | ) | | |
| Plaintiff | ) | **CIVIL ACTION** | |
| v. | ) | | |
| | ) | **No. 07-1848** | |
| BRIAN SAPIENT | ) | | |
| aka BRIAN J. CUTLER | ) | | |
| Defendant | ) | | |

### *BRIEF IN OPPOSITION TO MOTION TO DISMISS*

The Plaintiff, EXPLOROLOGIST LIMITED, by and through its attorneys, Richard Winelander, Alan L. Frank, and Alan L. Frank Law Associates, P.C., respectfully requests that this Honorable Court deny the "Motion to Dismiss" filed by BRIAN J. CUTLER aka BRIAN SAPIENT individually and doing business as the Rational Response Squad (Sapient[1]). The grounds for this opposition are as follows:

The Plaintiff, EXPLOROLOGIST LIMITED (Explorologist) has sued Sapient for infringement of British Copyright Law, commercial disparagement (defamation) and appropriation of name or likeness for a commercial purpose. Sapient has moved to dismiss the complaint claiming that this Court lacks subject matter jurisdiction over Plaintiff's claims based on British Copyright Law. He also claims that Plaintiff has not alleged any fact and could not allege any facts which would support his liability for infringement of British Copyright Law, commercial disparagement and appropriation of name or likeness.

Initially the Plaintiff maintains many of the matters raised in the Defendant's motion are premature, insomuch that the defenses raised (subject matter jurisdiction, fair use and immunity ) require in depth factual development and analysis. Nonetheless Plaintiff believes it is clear that

---

[1] For consistency Plaintiff will use Mr. Cutler's alias.

this Court has subject matter jurisdiction to address Plaintiff's claims based on British Copyright Law.  The Communications Decency Act does not give Sapient immunity for the words he utters, nor for theft of Intellectual Property.  The complaint clearly alleges sufficient facts to put Defendant on notice of the essential elements of the Plaintiff's cause of action for infringement of British Copyright Law, commercial disparagement and appropriation of name or likeness.

### THE DISPUTE
#### Genesis

In 1987, Shimshon Shtrang (Shipi) created the film "Dr Hughes[2]", at a public performance which took place at the Hexagon in Reading, England at a charity show for the purpose of obtaining funding for the purchase of a new scanner for the Royal Berkshire Hospital. (Amended complaint at ¶6, 7 and 8).   In November 2006, Sapient heavily edited then uploaded a portion of a NOVA TV show entitled "Secrets of the Psychics[3]" to www.youtube.com.[4]  His act of clicking the "upload video" link was itself a misrepresentation.[5] Sapient's editing included converting the VHS tape to digital format, deleting 45 minutes of the special, removing all copyright notifications and renaming it "James Randi exposes Uri Geller and Peter Popoff (Amended Complaint at ¶ 10)."  Sapient also uploaded the YouTube clip[6] and a BBC special entitled "The World Around Us"[7] to his Rational Responders website where he solicits donations

---

[2] A very private and non public figure.
[3] According to Exhibit C attached to the Defendant's Request for Judicial Notice, WGBH Educational Foundation is the owner of the copyright.
[4]  In violation of YouTubes terms of use. "In connection with User Submissions, you further agree that you will not: (i) submit material that is copyrighted, protected by trade secret or otherwise subject to third party proprietary rights, including privacy and publicity rights, unless you are the owner of such rights or have permission from their rightful owner to post the material and to grant YouTube all of the license rights granted herein…"Terms of Use §.5.B. User Submissions.
[5] "Do not upload any TV shows, music videos, music concerts, or commercials without permission unless they consist entirely of content you created yourself.
By clicking "Upload Video," you are representing that this video does not violate YouTube's Terms of Use and that you own all copyrights in this video or have express permission from all copyright owners to upload it."
[6] http://www.rationalresponders.com/james_randi_exposes_uri_geller_and_peter_popoff
[7] http://www.rationalresponders.com/james_randi_in_a_45_min_show_featured_against_uri_geller

and sell books, t-shirts, videos and miscellaneous items through a portal to Amazon.com[8]. As he did with "Secrets of the Psychics," Sapient removed all copyright notifications from "The World Around Us."

On March 23, 2007 after seeing the film he shot incorporated into the Defendant's posting on YouTube, Shipi was shocked and angered.  As a result, he sent a request to YouTube asking for the posting to be removed[9].  The posting was removed and Sapient's account was suspended by YouTube for this and other transgressions.

In response, Sapient did several things.  First he uploaded the video to revver.com, where through his own admission; he began making more money on it.  Next, on March 26, 2007, he told YouTube that he had the permission of James Randi[10] to post the video[11].  Then, on March

---

[8] http://www.rationalresponders.com/amazon_portal
[9] "Hi Justin,
I faxed the DMCA form…
These clip http://www.youtube.com/watch?v=M9w7jHYriFo and
http://www.youtube.com/watch?v=jBQD2uunYYY was removed by you previously and was put on right back. In it there are several scenes and photos that the copy right belong to us. There is an English Dr. who introduces Uri which is a copyright infringement and some scenes from a documentary we did and the usage of the Carson clip is without our consent…
Thanks for your help.
Regards,
Shipi
[10] Not WGBH Educational Foundation the owner of the copyright.
[11]  I am officially counter-notifying per your procedures.  The video that you have removed from claimant "Explorogist LTD" is NOT owned by Explorologist. Explorologist is just the front name for a guy named "Uri Geller" who is a professional con man.  He has now conned you into believing this video belongs to him, additionally I am not the only one he did this too.  He has claimed ownership of many videos on youtube in the last few days that expose him as a fraud.

I spoke to the man who produced the segment (James Randi) for the Tonight show and Nova on Saturday. He was given permission by Johnny Carson to use the video of Geller however he sees fit many years ago, Johnny Carson and him were close friends (yes Johnny Carson of the tonight show). You can contact James Randi at: 954-467-1112 or 954-560-1114

I would like the video made accessible again.  Additionally I'm not sure if it is related, I can only assume it was but my entire account has been suspended.  If in fact it was suspended as a result of copyright infringement, please reinstate my account. Also, I would suggest legal proceedings be brought against Uri Geller (Explorogist LTD) for fraudulently submitting a copyright request.  Is that up to me to put in motion, or Is that your responsibility?

29, 2007, he uploaded a 15 minute video of images of himself discussing Uri Geller. During Sapient's rant, he falsely accused Uri Geller of committing fraud and of being a professional con. He also added a post to his website which accused the Plaintiff of being a dummy or sham corporation. (Amended Complaint at ¶ 15 and 19).  As a result of Sapient's March 26, 2007 statement, YouTube reinstated the video and informed the Plaintiff that it would have to file suit to resolve its copyright claims.

### *The Lawsuits*

In his motion, Sapient makes many claims as to what he believes to be at issue here.  He loudly claims that the case is about free speech.  Put in its simplest terms, this case is about theft, not speech.  Sapient is using the Plaintiff's property and the property of WGBH Educational Foundation (WGBH ) for his own profit.  He does this without permission, acknowledgement, license or the payment of royalties.  His claim that he is only using 8 seconds of Plaintiff's film does not alter the result.  The NOVA special has been broadcast for over 14 years and neither the Plaintiff nor Uri Geller has made any complaint, let alone filed a lawsuit.  In Count I, the Plaintiff seeks to make Sapient edit its "film out[12]" of his posting, obtain royalties for his past use, and prohibit its future use.  Count II addresses Sapient's accusations of fraud and criminal conduct made in is letters, his internet postings and during  his ranting monologue on March 29,

---

Under penalty of perjury I choose to willingly make a statement that the material was disabled/removed as a mistake.  Additionally, I under penalty of perjury consent to jurisdiction of federal court.
Thanks for your attention to this matter,

Brian Sapient
2821 Glenview Street
Philadelphia, PA. 19149
account name: rationalresponse
215-253-3733
(consider that a signature under penalty of perjury)

[12]  Ironically one of the few positive points about Uri Geller in the original NOVA special or in Sapient's unauthorized copy.

2007.  While Count III, seeks to redress Sapient's use of company property for his own benefit and commercial purpose.

The day after this case was filed, Sapient filed a suit against the Plaintiff in the United States District Court for the Northern  District of  California (case # 3:07-cv-02478-BZ) alleging that Shipi's March 23, 2007 complaint to YouTube was a fraudulent misrepresentation and requesting the Court to declare that Sapient's use of the Plaintiff's film is not an infringement of Plaintiff's copyright.

## LEGAL STANDARD

When ruling on a motion to dismiss, the court must accept as true all well-pleaded allegations of fact and any reasonable inferences that may be drawn, in plaintiff's complaint and must determine whether "under any reasonable reading of the pleadings, plaintiffs may be entitled to relief." *Nami v. Fauver*, 82 F.3d 63, 65 (3d Cir. 1996) (citations omitted).  The general rule is that "a district court ruling on a motion to dismiss may not consider matter extraneous to the pleadings." *In re Burlington Coat Factory Sec. Litig*., 114 F.3d 1410, 1426 (3d Cir. 1997). "It is black-letter law that [a] motion to dismiss for failure to state a claim . . . is to be evaluated only on the pleadings." *Mele v. Fed. Reserve Bank of N.Y.*, 359 F.3d 251, 257 (3d Cir. 2004), citing *A.D. Bedell Wholesale Co. v. Philip Morris, Inc*., 263 F.3d 239, 266 (3d Cir. 2001). Moreover, in evaluating plaintiffs' pleadings, a court should not accept as true legal conclusions or unwarranted factual inferences. *Bell Atl. Corp. v. Twombly*, -- U.S. --, 127 S.Ct. 1955 (2007), "go beyond the facts alleged in the Complaint and the documents on which the claims made therein were based." *Angelastro v. Prudential-Bache Sec., Inc.*, 764 F.2d 939, 944 (3rd Cir.1985) or credit any "bald assertions." *In re Burlington Coat Factory Sec. Litig*., 114 F.3d at 1429.

In evaluating a motion to dismiss, all allegations in the complaint and all reasonable inferences that can be drawn therefrom must be accepted as true and viewed in the light most favorable to the nonmoving party. *Rocks v. City of Phila.*, 868 F.2d 644, 645 (3d Cir.1989) (citing Wisniewski v. Johns-Manville Corp., 759 F.2d 271, 273 (3d Cir.1985)).  The court may dismiss a complaint, "only if it is certain that no relief could be granted under any set of facts that could be proved consistent with the allegations." *Swin Res. Sys., Inc. v. Lycoming County*, 883 F.2d 245, 247 (3d Cir.1989).

Since a motion to dismiss tests the sufficiency of a complaint, "it does not resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." *Republican Party of N.C. v. Martin*, 980 F.2d 943, 952 (4th Cir.1992); *Flight Systems, Inc. v. Electronic Data Systems Corp.*112 F.3d 124 (3d Cir. 1997).  Thus, the entitlement to immunity under the Communications Decency Act, 47 U.S.C.A. § 230 (CDA) should not be determined on a motion to dismiss,  *Hy Cite Corp. v. badbusinessbureau.com, L.L.C.,* 418 F.Supp.2d 1142, 1149 (D. Arizona 2005); see also *Batzel v. Smith*, 333 F.3d 1018, 1021 (9th Cir.2003)(case remanded for factual development).  Similarly, matters of defense, such as fair use, are also premature because they require in depth factual development and analysis. *Hustler Magazine, Inc. v. Moral Majority, Inc*., 796 F.2d 1148, 1150-51 (9th Cir.1986) (Fair use is a mixed question of law and fact).

## COUNT I

In Count I, the Plaintiff seeks to make Sapient edit its "film" out of his posting, prevent him from using it again and obtain royalties for his past use.  Defendant has attacked Count I in two respects: first, pursuant to Fed.R.Civ.P. 12(b)(1), for an alleged lack of subject jurisdiction;

and second, for failure to state a claim, pursuant to Fed.R.Civ.P. 12(b)(6). Plaintiff will discuss them in turn.

### A.
### U. S. Courts have Subject Matter Jurisdiction Over Plaintiff's Claims Based on British Copyright Law.

Initially, it should be noted that when a court is dealing with a motion to dismiss based an alleged of lack of subject jurisdiction, a "summary disposition on the merits is disfavored" *Mortensen v. First Federal Savings & Loan Ass'n*, 549 F.2d 884, 891 (3d Cir. 1977); *Johnsrud v. Carter*, 620 F.2d 29, 33 (3d Cir 1980). This is so because a factual record needs to be generated in order to determine the merits of the defendant's jurisdictional attack.

With that being said, Plaintiff will address Sapient's jurisdictional complaint. This Court has diversity jurisdiction over the instant matter pursuant to 28 U.S.C. § 1332(a)(2), *London Film Productions Ltd. v. Intercontinental Communications, Inc.,* 580 F.Supp. 47 (S.D.N.Y. 1984). Plaintiff, a foreign corporation (Amended Complaint at ¶ 1), has sued the Defendant who is a citizen of Pennsylvania. (Amended Complaint at ¶ 2). The infringing act of uploading the video was committed in this judicial district. Sapient's rant was filmed in a basement in Philadelphia. The video was downloaded in United Kingdom (Amended complaint at ¶ 10) and throughout United States. Therefore, this Court has subject matter jurisdiction to address Plaintiff's claims based on British Copyright Law; *id; Frink America, Inc. v. Champion Road Machinery Ltd*., 961 F.Supp. 398 (N.D.N.Y. 1997); *Boosey & Hawkes Music Publishers, Ltd. v. Walt Disney Co*., 145 F.3d 481 (2d Cir. 1998); *Armstrong v Virgin Records, Ltd.*, 91 F.Supp.2d 628 (S.D.N.Y. 1999).

As Professor Nimmer pointed out:

if the plaintiff has a valid cause of action under the copyright laws of a foreign country, and if personal jurisdiction of the defendant can be obtained in an

> American court, it is arguable that an action may be brought in such court for infringement of a foreign copyright law. This would be when the theory that copyright infringement constituted a transitory cause of action, and hence, may be adjudicated in the court's of a sovereign other than the one in which the cause of action arose".

3 Melville B. Nimmer & David Nimmer, Nimmer on Copyright § 17.03, at 17-23 (2002).

In *London Film,* the Court held that the exercise of subject matter jurisdiction is appropriate in cases of transnational copyright infringement. The courts in *Frink America, supra, Boosey & Hawkes supra,* and *Armstrong, supra,* all reached the same conclusion. A finding of subject matter jurisdiction is compelled here as well.

The Defendant asks this Court to reject this clear line of authority (and Professor Nimmer's treatise) and instead rely on dicta from, *ITSI T.V. Productions, Inc. v. California Authority of Racing Fairs*, 785 F.Supp. 854, *affed in part, rev on other grounds*, 3 Fed. 3d 1289 (9th Cir. 1993) and Internet bloggers. (See defendant brief at p. 27 citing http.williampatry.blogspot.com). In *ITSI T.V.,* the court ruled that it lacked subject matter jurisdiction over a Mexican corporation for violation of US Copyright law absent showing that it had committed direct act of copyright infringement in United States or that it was contributorily or vicariously liable for acts of infringement committed by others in United States. In passing, the court mentioned that it would not allow the plaintiff to amend its complaint to state a cause of action against the defendant under Mexican copyright law for acts a Mexican corporation committed in Mexico, *ITSI T.V* , 785 F.Supp. at 866. The facts of the instant case do not support a similar finding. Sapient is being sued in the jurisdiction where he lives and committed the infringing act.

Therefore, this Court has subject matter jurisdiction because there is complete diversity between the parties, the Defendant is a resident of this jurisdiction and actually committed

infringement in this jurisdiction, which was felt around the world. Additionally Sapient agreed to submit to the jurisdiction of this Court in both his letter to YouTube (see page 5 footnote 10, *supra*) and by agreeing to YouTube's terms of service.[13] As a result, the motion should be denied or, in the alternative, resolved after a full evidentiary hearing on the merits of the Defendant's jurisdictional claim.

## B.
## The Communications Decency Act Does Not Grant Immunity for Theft of Intellectual Property

The Communications Decency Act, 47 U.S.C.A. § 230 (CDA) does not give Sapient immunity for theft of the Plaintiff's intellectual property, *Gucci America, Inc. v. Hall & Associates*, 135 F.Supp.2d 409 (S.D.N.Y. 2001). Likewise, he is not entitled to immunity because he is an "information content provider" *Batzel v. Smith*, *supra*, *Whitney Information Network, Inc. v. Xcentric Venture, LLC*, 199 Fed.Appx. 738, 2006 WL 2243041 (11th Cir. 2006).

Clearly the CDA immunizes an internet service provider from liability for defamatory speech developed by a third party that is published on the Internet. *See, Batzel v. Smith,* 333 F.3d at 1026-34; *Zeran v. Am. Online, Inc.,* 129 F.3d 327, 331 (4th Cir.1997) (defamation claim against AOL for failing to remove offensive material from bulletin board); *Blumenthal v. Drudge*, 992 F.Supp. 44, 50 (D.D.C.1998) (defamation claim against AOL for sponsoring on-line gossip column[14]); *Carafano v. Metrosplash.com., Inc.*, 339 F.3d 1119, 1124 (9th Cir.2003) (CDA applies to invasion of privacy, misappropriation of the right of publicity, defamation and

---

[13] 4. Intellectual Property Rights
The content on the YouTube Website, except all User Submissions (as defined below), including without limitation, the text, software, scripts, graphics, photos, sounds, music, videos, interactive features and the like ("Content") and the trademarks, service marks and logos contained therein ("Marks"), are owned by or licensed to YouTube, subject to copyright and other intellectual property rights under United States and foreign laws and international conventions. Terms of Use §4.
[14] Conversely there was no immunity for gossip columnist Matt Drudge.

negligence claims against an internet dating service relating to a third party's creation of false

profile using plaintiff's identity).

> The CDA provides:
>
>  (c) Protection for "Good Samaritan" blocking and screening of offensive material
> (1) Treatment of publisher or speaker
> No provider or user of an interactive computer service shall be treated as the publisher or speaker of *any information provided by another information content provider*.
> (2) Civil liability
> No provider or user of an interactive computer service shall be held liable on account of-(A) any action voluntarily taken in good faith to restrict access to or availability of material that the provider or user considers to be obscene, lewd, lascivious, filthy, excessively violent, harassing, or otherwise objectionable, whether or not such material is constitutionally protected; or (B) any action taken to enable or make available to information content providers or others the technical means to restrict access to material described in paragraph (1).

47 U.S.C. § 230(c).  (Emphasis added).  Section 230(f)(2) defines "interactive computer service"

as:

> any information service, system, or access software provider that provides or enables computer access by multiple users to a computer server, including specifically a service or system that provides access to the Internet and such systems operated or services offered by libraries or educational institutions.

47 U.S.C. § 230(f)(2).  Section 230(f)(3) defines "information content provider" as "any person

or entity that is responsible, in whole *or in part*, for the creation or development of information

*provided through the Internet* or any other interactive computer service." 47 U.S.C. § 230(f)(3).

(Emphasis added).

The CDA does not give Sapient immunity for theft of the Plaintiff's intellectual property,

*Gucci America, Inc. v.  Hall & Associates*, *supra*.  The CDA expressly provides that "[n]othing

in this section shall be construed to limit or expand any law pertaining to intellectual property."

47 U.S.C. § 230 (e)(2). *See also*, *Ford Motor Co. v. GreatDomains.com, Inc*., 2001 WL 1176319

(E.D.Mich.2001).  Here, the complaint alleges that Sapient has infringed its intellectual property rights rendering the Defendant's claim of immunity unfounded.

Moreover, the CDA only immunizes "*information provided by another information content provider.*" 47 U.S.C. § 230(c)(1).  (Emphasis added).  One court, when faced with Sapient's version of a CDA defense, stated: "No case of which this court is aware has immunized a defendant from allegations that it created tortious content." *Anthony v. Yahoo! Inc.*, 421 F.Supp.2d 1257, 1262-1263 (N.D.Cal. 2006).

WGBH cannot be an *information content provider*.  It did not transmit the NOVA special to Sapient over the internet for publication on the internet. Rather, without request or authorization from WGBH, Sapient obtained a copy of the NOVA special in VHS[15] tape format, then converted it to digital form, removed the copyright notice, renamed it, and uploaded his heavily edited version of it to YouTube.   As such, he becomes the "information content provider" who has no immunity, *Batzel v. Smith, supra*.  The Court, in that case, reasoned that the defendant's:

> broad interpretation of § 230(c), users and providers of interactive computer services *could with impunity intentionally post material they knew was never meant to be put on the Internet*. At the same time, the creator or developer of the information presumably could not be held liable for unforeseeable publication of his material to huge numbers of people with whom he had no intention to communicate. *The result would be nearly limitless immunity for speech never meant to be broadcast over the Internet*.

> Supplying a "provider or user of an interactive computer service" with immunity in such circumstances is not consistent with Congress's expressly stated purposes in adopting § 230. Free speech and the development of the Internet are not "promote[d]" by affording immunity when providers and users of "interactive computer service[s]" *knew or had reason to know that the information provided was not intended for publication on the Internet*. Quite the contrary: Users of the Internet are likely to be discouraged from sending e-mails for fear that their e-mails may be published on the web without their permission.

---

[15]  See Exhibit A attached to the Defendant's Request for Judicial Notice.

Such a scenario is very different from the bulletin boards that Congress had in mind when passing § 230. When a user sends a message to a bulletin board, it is obvious that by doing so, he or she will be publicly posting the message. Here, by contrast, Smith claims that he had no idea that the Network even had a listserv. His expectation, he says, was that he was simply sending a private e-mail to an organization informing it of his concern about Batzel's artwork, and, he insists, he would not have sent the message had he known it would be sent on through the listserv. Absent an incentive for service providers and users to evaluate whether the content they receive is meant to be posted, speech over the Internet will be chilled rather than encouraged. Immunizing providers and users of "interactive computer service[s]" for publishing material when they have reason to know that the material is not intended for publication therefore contravenes the Congressional purpose of encouraging the "development of the Internet."

…

*immunizing a publisher or distributor for including content not intended for Internet publication increases the likelihood that obscene and defamatory material will be widely available. Not only will on-line publishers be able to distribute such material obtained from "hard copy" sources with impunity*, but, because the content provider him or herself never intended publication, there is a greater likelihood that the distributed material will in fact be defamatory or obscene.

*Batzel v. Smith,* 333 F.3d at 1033-34. (Emphasis added).  This reasoning applies equally to the case *sub judice.* Sapient took content that was not intended for Internet publication, transformed it to meet his own needs and posted it on the Internet.  He admits as much in his Motion to Dismiss: "[b]y uploading the NOVA segment, Sapient himself was making such commentary and criticism as well." (See Defendant's Brief at p.22).  As a result, the immunity granted by the section does not apply because to him because he was an "information content provider." *Whitney Information Network, Inc., supra, Hy Cite Corp., supra* (factual issue precludes disposition on motion to dismiss).

## C.
## Plaintiff States a Claim Based on British Copyright Law.

Sapient erroneously contends that the Plaintiff has failed to state a claim based on British copyright law.  He argues that CDPA § 20 of the Copyright, Designs and Patented Act of 1988[16] does not apply to his conduct.  *See*, Appendix of Foreign Laws ("Appendix"), Exhibit 1.  He misinterprets both the facts alleged and the law.

First, he claims he did not make the film available to the public.  Factually, he makes it available at his website17.  Secondly, he is interpreting CDPA § .20 as if the infringement arises only if the Defendant makes the work available to the public.  However, CDPA§.16(2) expressly includes "authorizing another to do any of the acts restricted by copyright" as an act of infringement. Specifically, the statute states: "Copyright in a work is infringed by a person who without the licence of the copyright owner *does, or authorises another* to do, any of the acts restricted by the copyright." CDPA§.16(2).  (Emphasis added). Here, by his own admission, he authorized YouTube to the post the Plaintiff's property without authorization.

The test for a substantial part is a question for the Court and is a matter of degree in each case.  The Defendant is correct in stating that the test involves (i) consideration of the skill labour and judgment contributed by the author (ii) what features make it an original work but also includes (a) the quantity and value of the material used (b) the degree to which use may prejudice sale (c) was the part taken commonplace or novel and striking (d) one assesses the part

---

16 Section 20: Infringement by communication to the public.
20.-(1) The communication to the public of the work is an act restricted by the copyright in -
   (a) a literary, dramatic, musical or artistic work,
   (b) a sound recording or film, or
   (c) a broadcast.
**(2)** References in this Part to communication to the public are to communication to the public by electronic transmission, and in relation to a work include -
   (a) the broadcasting of the work;
   (b) the making available to the public of the work by electronic transmission in such a way that members of the public may access it from a place and at a time individually chosen by them.
17 http://www.rationalresponders.com/james_randi_exposes_uri_geller_and_peter_popoff

taken with reference to the whole. However the extent of the appearance of the Clip as part of the totality of the Defendant's work is irrelevant. Evan "Sampling", the copying of short sections of another's work and incorporating it into a new work, is considered by legal scholar Skone James to potentially be an infringement of copyright.     COPINGER & SKONE JAMES ON COPYRIGHT § 27-173.

Infringement within the context of the film industry has included making a photograph of the whole or any substantial part of any image forming part of the film *Spelling Goldberg Productions Inc v BPC Publishing Ltd* [1981] RPC 283.  Appendix, Exhibit 2.  In *Spelling,* the Court held that copying a single frame from the television program *Starsky and Hutch* amounted to infringement of the copyright held in the program.  But again, as previously indicated, the Defendant is urging the court to decide a case in a factual vacuum without consideration of the factors. Therefore, the Defendant's complaint is premature.

### D.
### Plaintiff's Copyright Claims are not Barred by the First Amendment Because they Challenge Infringing Commercial Speech

Sapient contends that the First Amendment allows him to use intellectual property owned by others for his own commercial benefit without their consent, acknowledgment, or the payment of royalties.  He also contends that there is no provision under UK law that would correspond with the Fair Use Doctrine.  He is wrong on both counts.

There is no doubt that there is interplay between the fair use defense and first amendment free speech protections, *Eldred v. Ashcroft*, 537 U.S. 186 (1993). "The Copyright Clause and First Amendment were adopted close in time. This proximity indicates that, in the Framers' view, copyright's limited monopolies are compatible with free speech principles. Indeed, copyright's purpose is to promote the creation and publication of free expression." *Id.* 537 U.S. at 219.  The

Plaintiff maintains Sapient's objections are premature in that they cannot and should not be decided in an evidentiary vacuum.

It is fundamental that the fair use defense is a mixed question of law and fact. *See*, *Hustler*, 796 F.2d at 1150-51. *See also*, *Campbell v. Acuff-Rose Music, Inc.*, 510 U.S. 569 (1994), where the Supreme Court remanded the case stating: "it is impossible to deal with the fourth factor except by recognizing that a silent record on an important factor bearing on fair use disentitled the proponent of the defense, 2 Live Crew, to summary judgment. The evidentiary hole will doubtless be plugged on remand" 510 U.S. at 594. The Plaintiff intends to prove at trial that Sapient's use of the Plaintiff's property was profit motivated. The Defendant's *modus operandi* is to incite controversy to drive visitors into his website. He also adds content to make his website more visible to search engines, thereby bringing more visitors to his site. Once they arrive, he offers trinkets for sale and directs them to an Amazon.com portal were he gets commissions and/or royalties. He also generates income from advertising driven links connected to his revver.com to YouTube.com postings of the Plaintiff's property.

It is undoubtedly true that the law allows the fair use of a copyrighted work. Originally fair use was an equitable common law defense. Later it was codified and provides in pertinent part that:

> for purposes such as criticism, comment, news reporting, teaching (including multiple copies for classroom use), scholarship, or research, is not an infringement of copyright. In determining whether the use made of a work in any particular case is a fair use the factors to be considered shall include: (1) the purpose and character of the use; (2) the nature of the copyrighted work; (3) the substantiality of the portion used in relation to the copyrighted work as a whole; and (4) the effect on the potential market for or value of the copyrighted work.

17 U.S.C.A. § 107. However, as the Supreme Court pointed out, "every commercial use of copyrighted material is presumptively an unfair exploitation of the monopoly privilege that

belongs to the owner of the copyright." *Sony Corp. of America v. Universal City Studios, Inc.*, 464 U.S.417, 451 (1984).  Here, Sapient's, unauthorized use of both Plaintiff's and WGBH's property for profit. The driving of traffic to his website clearly points to a commercial use. As the Ninth Circuit recently pointed out:

> Financial benefit exists where the availability of infringing material "acts as a 'draw' for customers." *Fonovisa*, 76 F.3d at 263-64 (stating that financial benefit may be shown "where infringing performances enhance the attractiveness of a venue"). Ample evidence supports the district court's finding that Napster's future revenue is directly dependent upon "increases in userbase." More users register with the Napster system as the "quality and quantity of available music increases."

*A&M Records, Inc v. Napster, Inc*., 239 F.3d 1004, 1023 (9th Cir. 2001) (quoting, *Fonovisa, Inc. v. Cherry Auction, Inc*., 76 F.3d 259, 263-64 (9th Cir.1996)). Similarly soliciting donations at his web site constitutes a commercial use. *World Wrestling Fed'n Entertainment, Inc. v. Bozell*, 142 F.Supp. 2d 514, 531 (S.D.N.Y. 2001). As such, even under this meager record, it is clear that Sapient's use was commercial.

With regard to the second factor, what Sapient did was not creative. He simply made an exact copy of 25% of the original. There was no creative thought involved.  Since the fair use defense is equitable in nature. Sapient's use of the work is undermined by his bad faith. This is so because he did not use an authorized copy to make his copies, *Sega Enterprises Ltd. v. Maphia*, 857 F.Supp. 679 (N.D.Cal.1994); *Atari Games Corp. v. Nintendo of America Inc.*, 975 F.2d 832, 843 (Fed.Cir.1992). What turns his unclean hands filthy is that he removed the WGBH copyright notice and renamed it.

With respect to the third factor, Sapient's claim, that only eight seconds of the Plaintiff's file was used, is neither conclusive nor persuasive.  The fact that the portion of the copyrighted work used constitutes an insubstantial portion of the infringing work does not justify a finding of

fair use. *Harper & Row, Publishers, Inc. v. Nation Enterprises*, 471 U.S. 539 (1985). The *Harper*

Court pointed out that:

> [t]he public interest in the free flow of information is assured by the law's refusal to recognize a valid copyright in facts. *The fair use doctrine is not a license for corporate theft,* empowering a court to ignore a copyright whenever it determines the underlying work contains material of possible public importance.

Id, 471 U.S. at 558 (quoting *Iowa State Univ. Research Found., Inc. v. American Broad. Cos.,*

*Inc.*, 621 F.2d 57, 61 (2d Cir.1980)) (emphasis added). For example, in  *Iowa State, supra,*

ABC's use of eight seconds of the "champion" was sufficient to defeat its fair use defense.

Similarly the use of only 300 words from former President Gerald Ford's unpublished 200,000–

word manuscript did not constitute a fair use, *Harper, supra.*  But, again, this analysis should not

be made in the factual vacuum of a motion to dismiss.  Based on the complaint, the amount of

the "Film" used is unknown.

Sapient's contention that there is no provision under UK law comparable with the Fair

Use Doctrine is also an error.  Under British Law, it is called "fair dealing."  The Copyright,

Designs and Patented Act of 1988 (CDPA) provides, in pertinent part:

> Section 30: Criticism, review and news reporting.
>
> 30.-(1) Fair dealing with a work for the purpose of criticism or review, of that or another work or of a performance of a work, does not infringe any copyright in the work provided that it is accompanied by a sufficient acknowledgement and provided that the work has been made available to the public.
> (1A) For the purposes of subsection (1) a work has been made available to the public if it has been made available by any means, including -
> (a) the issue of copies to the public;
> (b) making the work available by means of an electronic retrieval system;
> (c) the rental or lending of copies of the work to the public;
> (d) the performance, exhibition, playing or showing of the work in public;
> (e) the communication to the public of the work,
> but in determining generally for the purposes of that subsection whether a work has been made available to the public no account shall be taken of any unauthorised act.

> (2) Fair dealing with a work (other than a photograph) for the purpose of reporting current events does not infringe any copyright in the work provided that (subject to subsection (3)) it is accompanied by a sufficient acknowledgement.
>
> (3) No acknowledgement is required in connection with the reporting of current events by means of a sound recording, film or broadcast where this would be impossible for reasons of practicality or otherwise.

CDPA § 30.  Thus, the Fair dealing section, like the fair use doctrine allows for criticism and review of copyrighted materials provided the critic acknowledges their ownership.  Here Sapient acknowledged no one. Not the Plaintiff and certainly not WGBH. Nneedless to say the Defendant's complaints are without foundation.

## COUNT II

Count II is entitled Commercial Disparagement.  The Defendant has move for dismissal claiming that Plaintiff has failed to set forth its damages with the required particularity. *Testing Systems, Inc. v. Magnaflux Corp.*, 251 F.Supp. 286 (E.D.Pa.1966).  In *Testing Systems*, Judge John W. Lord explained that "[t]he necessity of pleading and proving special damages has been an integral part of the action of disparagement of property since it first developed as an extension of slander of title." Id., 251 F.Supp. at 290.  However, where, as here, the defamatory statement is one accusing criminal conduct, it is defamatory *per se* and special damages need not apply. *Zerpol Corp. v. DMP Corp.*, 561 F.Supp. 404 (D.C.Pa. 1983) Count II specifically alleges that Sapient, in letter to YouTube, his posting and/or during the course of his March 29, 2007, rant "maliciously, and/or in reckless disregard for the truth, falsely accusing the Plaintiff of being a dummy or sham corporation and accused Uri Geller of being a professional con man and fraud and other criminal or immoral acts." (Amended complaint at ¶ 15).  The complaint goes on to allege that:

> as to the publication and/or republication by the Defendant of *the defamatory statements*, same were not only published with reckless disregard for their truth of (?) falsity, being implicitly malicious, but that such statements were additionally and/or alternatively intentionally malicious, made by the Defendant out of spite, hatred and dislike of the Plaintiff , EXPLOROLOGIST and Uri Geller, and that the

> Defendant purposefully and intentionally desired and intended to expose the Plaintiff, EXPLOROLOGIST and Uri Geller, to ridicule, scorn, contempt and/or hatred.

(Amended complaint at ¶ 17) (Emphasis Added). A complaint only requires a short and plain statement of facts showing that the pleader is entitled to relief. Fed.R.Civ.P.8(a). Under this rule a defamation Plaintiff does not have to plead the precise defamatory statements, nor must he specifically name the person who made the statements. So long as the count provides sufficient notice to defendants, it states a claim. *Tuman v. Genesis Associates,* 935 F.Supp. 1375, 1391 (E.D.Pa.1996).

In *Zerpol, supra,* the court was faced with a dilemma similar to the Plaintiff's in the instant case. "The first count of the amended complaint bears the heading "trade libel." But, in addition to charging trade libel, more commonly known as commercial disparagement, the allegations in that count can also be read as charging defamation of the corporate plaintiff." *Id*, 561 F.Supp. at 408. The *Zerpol* Court concluded "[h]ence, ignoring the "trade libel" heading of Count I of the amended complaint, the allegations thereunder may be read as sounding in defamation. Moreover because the advertisements are libelous per se, there is no requirement that Zerpol plead special damage." *Id*, 561 F.Supp. at 408.

Here, the Court should likewise ignore Count II's title of Commercial Disparagement, or allow the Plaintiff to amend this misnomer Likewise, if the Court finds that special damages must be pleaded, leave should be granted to file a second amended complaint alleging special damages. See, Forum *Publications, Inc. v. P.T. Publishers, Inc.*, 700 F.Supp. 236, 244 (E.D.Pa.1988) (granting plaintiff twenty days leave to amend); *KBT Corp., Inc. v. Ceridian Corp.*, 966 F.Supp. 369, 375 (E.D.Pa.1997) (granting plaintiff twenty days leave to amend); *Brunson Communications, Inc. v. Arbitron, Inc.*, 266 F.Supp.2d 377 (E.D.Pa. 2003)

## COUNT III

Defendant has attacked Count III claiming that the complaint has failed to allege Sapient used Plaintiff's property for his own commercial benefit. The Defendant is mistaken. The Plaintiff has specifically alleged: "The Defendant BRIAN SAPIENT, aka BRIAN J. CUTLER, without the Plaintiff, EXPLOROLOGIST's or Uri Geller 's consent, *used for his own benefit and commercial purpose* the likeness and image of Uri Geller." (Amended complaint at ¶ 20) (Emphasis Added). Fed.R.Civ.P.8(a) clearly states a "complaint only requires a short and plain statement of facts showing that the pleader is entitled to relief. Here, such a statement was made.

As previously mentioned, the Plaintiff intends to prove, at trial, that Sapient's use of the Plaintiff's property was profit motivated. His *modus operandi* is to incite controversy and to add content into his website to drive visitors there. Once they arrive, he offers trinkets for sale and directs them to an Amazon.com portal were he gets commissions and or royalties. He also generates income from advertising driven links connected to the revver.com and YouTube.com postings of the Plaintiff's property.

Finally, the Plaintiff incorporates by reference, its arguments with respect to Sapient's lack of immunity under the CDA because he is an "information content provider" *Batzel v. Smith, supra*; *Whitney Information Network, Inc., supra, Hy Cite Corp., supra.*

**WHEREFORE**, the Plaintiff having answered the Defendant's Motion to Dismiss respectfully requests that this Honorable Court deny it and/or in the alternative grant Plaintiff leave to amend the Amended Complaint.

Respectfully submitted,
EXPLOROLOGIST LIMITED


By and Through Counsel,

22

/s/
_____
Richard Winelander, Esquire
1005 North Calvert Street
Baltimore, MD 21202
rw@rightverdict.com
410.576.7980
Fax:   410.385.2023

and

/s/
By: _____
Alan L. Frank Law Associates, P.C.
8380 Old York Road, Suite 410
Elkins Park, PA 19027
afrank@alflaw.net
215.935.1000
Fax:   215.935.1110

Attorneys for Plaintiff

### *CERTIFICATE OF SERVICE*

     I hereby certify that on this 28th   day of June 2007, a copy of the Opposition to Motion to Dismiss and supporting Brief was mailed, postage prepaid to:

Samuel W. Silver, Esquire
Chad Cooper, Esquire
SCHNADER HARRISON SEGAL & LEWIS LLP
1600 Market Street, Suite 3600
Philadelphia, P A 19103-7286


Jason Schultz, Esquire
Marcia Hofmann,  Esquire
Electronic Frontier Foundation
454 Shotwell Street
San Francisco, CA 94110


/s/
_____
Richard Winelander

23