# EXHIBIT A

UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| EXPLOROLOGIST LIMITED,<br><br>                    Plaintiff,<br><br>v.<br><br>BRIAN SAPIENT aka BRIAN J. CUTLER,<br><br>                    Defendant. | Civil Action No. 2:07-cv-01848-LP<br><br><br>The Honorable<br>Louis H. Pollak |

## ORDER

**AND NOW**, this _____ day of _____, 2007, upon consideration of the Defendant's Motion to Dismiss Pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6), the response thereto, and any replies thereon, it is hereby **ORDERED** that the Motion is **GRANTED** and Plaintiff's claims are **DISMISSED WITH PREJUDICE**.

                                                          **BY THE COURT:**

                                                          _____

                                                          Louis H. Pollak, J.

UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| EXPLOROLOGIST LIMITED, | ) | Civil Action No. 2:07-cv-01848-LP |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | The Honorable |
| | ) | Louis H. Pollak |
| BRIAN SAPIENT aka BRIAN J. CUTLER, | ) | |
| | ) | |
| Defendant. | ) | |

**REPLY BRIEF IN SUPPORT OF
DEFENDANT'S MOTION TO DISMISS
PURSUANT TO FEDERAL
RULES OF CIVIL PROCEDURE
12(b)(1) AND 12(b)(6)**

## I.     INTRODUCTION

Plaintiff's Opposition is less a rebuttal than a sleight-of-hand. Rather than defending its Amended Complaint, Plaintiff seeks to gloss over its fatal flaws by introducing a deluge of over 50 new "facts" and citing inapposite case law. Plaintiff may not amend its inadequate pleading via its Opposition.[1] And, even if the Court were to accept Plaintiff's new

---

[1] *See City of Pittsburgh v. West Penn Power Co.*, 147 F.3d 256, 259 (3d Cir. 1998) (noting that on motion to dismiss, courts generally consider only allegations in the complaint, exhibits to the complaint, and matters of public record); *Car Carriers, Inc. v. Ford Motor Co.*, 745 F.2d 1101, 1107 (7th Cir. 1984) ("[I]t is axiomatic that the complaint may not be amended by the briefs in opposition to a motion to dismiss."); *Sansom Committee v. Lynn*, 366 F. Supp. 1271, 1278 (E.D.Pa 1973) (dismissing complaint for failure to state a claim where violation not alleged; "It would be unfair to defendants to make them infer all claims that could possibly arise from the law or facts set forth in the complaint. The proper means of raising claims [not] raised in the complaint is an amended complaint, not a brief in opposition to a motion to dismiss.").

facts and theories, the Amended Complaint *still* fails as a matter of law.

Importantly, Plaintiff now admits that the main video at issue—the NOVA Segment—has been widely available for over 14 years from WGBH without any objection from Plaintiff and that, at most, only *eight seconds* of material contained within that video are at issue in this dispute. (Opp'n at 6, 18). Thus, Plaintiff's motivations for bringing suit against Defendant Brian Sapient ("Sapient") under British copyright law and incongruous state torts have become clear: it hopes to retaliate against Sapient for speaking out and criticizing its chief officer and majority shareholder, Uri Geller. For the reasons outlined in Defendant's Brief in Support of his Motion to Dismiss ("MTD") and those discussed below, this Court should dismiss the Amended Complaint with prejudice.

## II.  ARGUMENT

### A.  Plaintiff Admits That This Court Lacks Subject Matter Jurisdiction Over its British Copyright Claim.

As noted in Sapient's MTD, claims for copyright infringement must be brought under the laws of the country in which the alleged infringement occurred. (MTD at 28-30). Moreover, Congress has expressly preempted any cause of action (including those under foreign law) for acts of infringement occurring within the United States. *See id.* (discussing 17 U.S.C. § 301).

Plaintiff concedes that "[t]he infringing act of uploading the video was committed *in this judicial district*." (Opp'n at 9) (emphasis added). *See also id.* at 10 ("Sapient is being sued in the jurisdiction where he lives and committed the infringing act."); *id.* at 10-11 ("the Defendant is a resident of this jurisdiction and actually committed infringement in this

2

jurisdiction, which was felt around the world.").[2] In other words, it concedes that the activity allegedly at issue took place in the United States.[3] As such, U.S. law governs.

Remarkably, Plaintiff nevertheless insists that British law should apply, relying for the most part on the same cases and authorities—none of which are binding on this court—that Defendant already raised and distinguished in its opening papers.[4] (MTD at 26-28). As explained there, this Court need not, and should not "enter the bramble bush of ascertaining and applying foreign law without an urgent reason to do so." *ITSI T.V. Prod. v. California Auth. of Racing Fairs*, 785 F. Supp. 854, 866 (E.D. Cal. 1992), *aff'd in part, rev'd in part on other grounds*, 3 F.3d 1289 (9th Cir. 1993). There is no such urgent reason here, but only a barely concealed effort to avoid United States copyright law, with its attendant fair use protections. As such, this Court should dismiss Count I.

### B.   CDA 230 Provides Complete Immunity for Claims Arising From Republication of the NOVA Segment.

Plaintiff attacks Sapient's immunity under Section 230 of the Communications

---

[2] Plaintiff goes on to state, "The video was downloaded in [sic] United Kingdom." (Opp'n at 9). However, the Amended Complaint alleges that it was citizens of the United Kingdom, not Sapient, who did the alleged downloading. (Am. Compl. ¶ 10). Moreover, the source of any transmission to the UK was YouTube, not Sapient. (MTD at 31).

[3] Plaintiff also argues that Sapient somehow agreed to "jurisdiction" in his counter-notice email to YouTube. (Opp'n at 11). However, Sapient consented to personal jurisdiction, not subject matter jurisdiction, which cannot be waived by a party.

[4] The single new case Plaintiff cites—*Boosey & Hawkes Music Publishers Ltd. v. Walt Disney Co.*, 145 F.3d 481 (2d Cir. 1981)—is inapposite. The question before the court in that case was not the applicability of transitory tort doctrine to foreign IP claims, but the distinct doctrine of *forum non conveniens*. 145 F.3d at 491-92. As for Plaintiff's reliance on Professor Nimmer, the learned professor merely suggests that it is "arguable" that jurisdiction might exist if a plaintiff has a valid cause of action under foreign law.

Decency Act ("Section 230"). Yet Plaintiff does not dispute that YouTube is an interactive computer service ("ICS"), that Sapient is a user of that service, or that it seeks to impose liability for his republication of the NOVA Segment on YouTube—three essential elements of Section 230 immunity. Instead, it challenges three aspects of Sapient's immunity claim: 1) whether Section 230 provides immunity against foreign intellectual property claims; 2) whether WGBH (the producer of NOVA) is an information content provider ("ICP") for the NOVA Segment; and 3) whether Sapient is also an ICP for the NOVA Segment. As explained below, numerous courts have considered and resolved each of these challenges. Following these precedents, Sapient is entitled to Section 230's absolute immunity.[5]

    *1.    Section 230 Bars Plaintiff's British Copyright Claim.*

Congress passed Section 230 in order to protect users of interactive communication services like Sapient from the bewildering array of state, local, and foreign laws that might otherwise chill their online speech. (MTD at 16-17). In doing so, it made an express choice to limit available causes of actions to those under its own control—federal causes of action. *Id.* Plaintiff ignores this Congressional mandate and policy choice, instead arguing that Section 230 does not provide immunity for "theft of … intellectual property," citing Section 230 for the proposition that non-federal intellectual property claims are allowed as well. (Opp'n at 11).

---

[5] Plaintiff complains that "entitlement to [Section 230] immunity . . . should not be determined on a motion to dismiss." (Opp'n at 8). However, as noted in the MTD, the Third Circuit and this Court regularly grant such motions when it is clear that Section 230 bars the claims alleged in a plaintiff's complaint. (MTD at 8 n.5). The two cases cited by Plaintiff do not hold otherwise. *Hy Cite Corp. v. Badbusinessbureau.com, LLC* denied its motion to dismiss because the plaintiff had pled facts that, if true, would disqualify defendant for Section 230 immunity—*not* because dismissal was inappropriate at that stage. 418 F. Supp. 2d 1142, 1149 (D. Ariz. 2005). Additionally, *Batzel v. Smith* did not involve a motion pursuant to Fed. R. Civ. P. 12(b)(6). 333 F.3d 1018 (9th Cir. 2003).

However, as explained in the MTD, this theory was expressly raised and rejected by the Ninth Circuit Court of Appeals in *Perfect 10 v. ccBill,* 481 F.3d 751, 767 (9th Cir. 2007) (holding that the Section 230(e)(2) limitation only applies to *federal* intellectual property claims and no others). (MTD at 16-17). Unable to distinguish *ccBill*, Plaintiff cites instead to two inapposite cases, each holding that Section 230 did not bar *federal* intellectual property claims. Had Plaintiff chosen to bring a claim under U.S. copyright law, these cases might have been relevant; however, having taken great pains to bring a foreign copyright claim instead, Plaintiff cannot now call on Section 230's exception for federal intellectual property suits to assist its case.

        2.    *WGBH is the Section 230 "Information Content Provider" in the Amended Complaint, not Sapient.*

Next, Plaintiff erroneously contends that WGBH does not satisfy the definition of "information content provider" ("ICP") under Section 230. (Opp'n at 13). Section 230 defines an ICP as "any person or entity that is responsible, in whole or in part, for the creation or development of information provided through the Internet or any other [ICS]." 47 U.S.C. § 230. According to Plaintiff itself, WGBH was responsible for the initial creation and distribution of the NOVA Segment. (Opp'n at 6) (admitting WGBH created the video and has distributed it without objection for over 14 years). Moreover, judicial notice of the videotape itself (to which Plaintiff has not objected) shows indisputably that the digital video posted to YouTube is a verbatim segment of the NOVA Documentary without any additional creation or development. *Compare* Request for Judicial Notice, Ex. A *with* NOVA Segment, http://www.youtube.com/watch?v=M9w7jHYriFo. Thus, there can be no serious dispute that WGBH, rather than Sapient, is the ICP of the disputed information.

Plaintiff attempts to avoid this reality by reading an intent requirement into

5

Section 230. (Opp'n at 13-14). Section 230 imposes no such requirement. Section 230(f)(3) simply defines an ICP as an entity that is responsible for "information provided through the Internet or any other [ICS]." 47 U.S.C. § 230(f)(3). The statute does not require that the ICP *itself* provide this information through the Internet; rather, "provided through the Internet" modifies the word "information," requiring only that the information at some point travel through the Internet or some other ICS.

Here, Plaintiff has alleged that the information (the NOVA Segment) was provided through the Internet via YouTube, an ICS. (Am. Compl. ¶10). Therefore, Plaintiff's own allegations defeat its argument. *See also D'Alonzo v. Truscello*, No. 0274, 2006 WL 1768091, at *5-6 (Ct. Com. Pl. May 31, 2006) (holding that the defendant's republication of an allegedly defamatory Philadelphia Daily News print article on a website did not make her an ICP "since she did not create nor author the article published in the website" and that "[c]learly, the original publisher of the material was the Daily News"; finding dismissal appropriate "[s]ince the reproduction of the newspaper article in the website is exactly the situation the Communication [sic] Decency Act contemplated for immunity purposes, no error was committed [in dismissing the case.]").

Further, Plaintiff misconstrues its primary authority, *Batzel v. Smith*, 333 F.3d 1018 (9th Cir. 2003). *Batzel* concerned an allegedly defamatory *private* email about the plaintiff that was written and sent via the Internet by a third party to the defendant, who operated a website and listserv about museum security issues. 333 F.3d at 1021. The defendant subsequently republished that email through those online fora. *Id.* at 1022. On these facts, the Ninth Circuit swiftly concluded that the third-party provider of the email, rather than the defendant, was the ICP. *Id.* at 1031. Here, it is the same. WGBH originally published the

content of the NOVA Segment; Sapient merely republished it. *Batzel* thus supports WGBH as the ICP of the disputed matter, not Sapient.[6]

*Batzel* did recognize one additional limitation on CDA 230 immunity—but that limitation does not apply here. *After* finding that the defendant satisfied all elements of the standard Section 230 test, the court in *Batzel* determined that immunity could be denied for republication of an email where the ICS could not reasonably believe the email was intended for public viewing. *Id.* at 1033. Here, by contrast, any reasonable person would believe that the NOVA Documentary was intended to be viewed by as wide an audience as possible, because WGBH broadcast it on PBS and marketed the NOVA Documentary worldwide. *See* Request for Judicial Notice, Ex. A (NOVA, Secrets of the Psychics). It also reached out to Internet users by creating a website about the show. *See id.*, Ex. B (NOVA, Secrets of the Psychics: Program Overview). Thus, the *Batzel* private/public limitation has no bearing on this case.[7]

Finally, Plaintiff's own admission that the "NOVA special has been broadcast for over 14 years and neither the Plaintiff nor Uri Geller has made any complaint, let alone filed a lawsuit," (opp'n at 6), undermines its argument that the private/public rationale of *Batzel* applies to this case. As Plaintiff acknowledges, (*see* opp'n at 14), the *Batzel* court was concerned that "immunizing a publisher or distributor for including content not intended for Internet publication increases the likelihood that obscene and defamatory material will be widely available." 333

---

[6] Even if Sapient fit the ICP definition for other information, this would not preclude immunity. *See e.g. Barrett v. Rosenthal*, 146 P.3d 510, 527 (Cal. 2006).

[7] *See also Ramey v. Darkside Prods.*, No.02-730 (GK), 2004 U.S. Dist. LEXIS 10107, at *20 (D.D.C. May 17, 2004) (immunizing a website operator for publishing offline photographs in an online advertisement); *Prickett v. InfoUSA, Inc.*, No. 4:05-cv-10, 2006 U.S. Dist. LEXIS 21867, at *18 (E.D. Tex. March 30, 2006) (information broker immune for publishing personal information in a business database).

F.3d at 1034. Here, Plaintiff (the allegedly harmed party) *admits* that the material in question has been publicly distributed for over a decade. Thus, even *Batzel*'s private/public limitation is irrelevant.[8]

### C.  Plaintiff's Claims Are Barred by the First Amendment And Fair Use.

Plaintiff attempts to avoid the protections of the First Amendment and the fair use doctrine, 17 U.S.C. § 107, by making three meritless arguments: (1) courts may not assess the viability of a fair use defense upon a motion to dismiss, (2) a commercial use cannot be a fair use, and (3) the statutory scheme for "fair dealing" under British law is equivalent to fair use under United States law.[9]

#### 1.  *The Court May Assess Fair Use on a Motion to Dismiss.*

Plaintiff suggests that federal courts are forbidden from assessing fair use on a motion to dismiss. (Opp'n at 17). Not so. When presented with a claim upon which relief cannot be granted due to constitutional repugnancy, a court is free to conserve its judicial

---

[8] Plaintiff cites three additional decisions that do not help its case, *Anthony v. Yahoo! Inc.*, *Hy Cite Corp. v. badbusinessbureau.com, LLC,* and *Whitney Information Network v. Xcentric Ventures LLC*. All three contain allegations that the defendants at issue actually created the harmful content. *Anthony*, 421 F. Supp. 2d 1257, 1262-63 (N.D. Cal. 2006); *Hy Cite*, 418 F.Supp.2d 1142, 1149 (D. Ariz. 2005); *Whitney*, 199 Fed. Appx. 738, 744 (11th Cir. 2006). Here, there is no allegation that Sapient actually created the content at issue, only that he republished a segment of it verbatim. (Opp'n at 18) (alleging Sapient was not creative but rather simply made an exact copy of 25% of the original NOVA Documentary). *See also Green v. Am. Online, Inc.*, 318 F.3d 465, 471 (3d Cir. 2003) (Section 230 bars claims stemming from the "exercise of a publisher's traditional editorial functions—such as deciding whether to publish, withdraw, postpone, or alter content."); *Batzel*, 333 F.3d at 1031 (same); *Ben Ezra, Weinstein & Co. v. Am. Online, Inc.*, 206 F.3d 980, 986 (10th Cir. 2000); *Barrett*, 146 P.3d at 527 n.19.

[9] Plaintiff also attempts to resurrect its British copyright claim by recasting it as a claim for "authorizing" infringement instead of direct infringement. As noted above, Plaintiff cannot use its Opposition to rewrite its Complaint. Moreover, given that Section 230 bars any foreign copyright claim, no amount of amendment can save it.

resources by making fair use determinations in the early stages of litigation where, as here, the facts as pled demonstrate fair use. Indeed, just over a month ago the Central District of California dismissed a copyright claim on fair use grounds where the transformative purpose of parody was clear on the facts alleged in the complaint. *See Burnett v. Twentieth Century Fox Film Corp.*, 2007 WL 1662343 (C.D.Cal., June 04, 2007). Here, where the transformative purpose of criticism is also self-evident on the face of the Complaint and Sapient is therefore explicitly entitled to a finding of non-infringement as a matter of law, *see* 17 U.S.C. § 107, it is both appropriate and consistent with U.S. public policy to dismiss the copyright claim now.

    2.    *Fair Use Allows For Commercial Transformative Uses.*

Plaintiff's next argument for casting aside the protections guaranteed by the First Amendment and 17 U.S.C. § 107 centers on a single allegation: that Sapient has used the material at issue for his own commercial benefit. To support this theory, it offers a host of new allegations regarding Sapient's supposed commercial endeavors, none of which should be given credence by this Court. *See supra*, n.1.

Yet even assuming arguendo that these new allegations were true and could be considered by this Court, they still would not suffice to rescue the claim or make it any less repugnant to the First Amendment and the doctrine of fair use. Plaintiff does not dispute that Sapient's purpose was criticism, (*see* opp'n at 22) ("His *modus operandi* is to incite controversy...."), nor that the work is highly transformative. Numerous courts, including the Supreme Court, have found transformative commercial uses of copyrighted works to be fair uses under Section 107 and the First Amendment. *Campbell v. Acuff-Rose Music, Inc.*, 510 U.S. 569, 584 (1994) (finding commercial release of 2 Live Crew parody song was still presumptively fair use due to its transformative nature); *Mattel, Inc. v. Walking Mountain Prods.*, 353 F.3d 792, 803 (9th Cir. 2003) (finding parodic photographs of plaintiff's doll constituted fair use despite being

offered for sale); *Burnett*, 2007 WL 1662343 at *3-4 (Fox Television's *Family Guy* parody was fair use).

In fact, Plaintiff's key case, *Campbell*, held that when the secondary use of a work constitutes a highly transformative use, such as a parody or criticism, commerciality cannot carry presumptive force against a finding of fairness, lest the presumption "'swallow nearly all of the illustrative uses listed in the preamble paragraph of § 107, including news reporting, comment, *criticism*, teaching, scholarship, and research, since these activities 'are generally conducted for profit in this country.'" *Campbell*, 510 U.S. at 584 (*quoting Harper & Row Publishers, Inc. v. Nation Enters.*, 471 U.S. 539, 592 (1985)) (emphasis added).

Further, the *Campbell* caveat applies not only to analysis of the first fair use factor (the purpose and character of the use) but also the fourth (the effect of the use on the potential market for the copyrighted work). *Campbell*, 510 U.S. at 592 (holding that when the secondary use is a transformative one, such as parody or criticism, "the unlikelihood that creators of imaginative works will license critical reviews or lampoons of their own productions removes such uses from the very notion of a potential licensing market."); *Walking Mountain*, 353 F.3d at 805; *Burnett*, 2007 WL 1662343 at *6-8. Following *Campbell*, both the first and fourth fair use factors weigh in Sapient's favor.

Plaintiff's analysis of the second fair use factor (the nature of the copyrighted work) is equally inapt because it fundamentally misunderstands the legal question presented. The amount of "creative thought" invested in the secondary use is not at issue; rather, the second factor turns on whether the *original work* is based on factual events (such as a live telecast of the 2008 Presidential Debates) or fiction (such as the new Harry Potter novel). *See, e.g., Stewart v. Abend*, 495 U.S. 207, 237-38 (1990) (contrasting fictional short story with factual works); *Sony*

*Corp. v. Universal City Studios, Inc.*, 464 U.S. 417, 455 n.40 (1984) (contrasting motion pictures with news broadcasts); *Time Inc v. Bernard Geis Assocs.*, 293 F. Supp. 130 (S.D.N.Y. 1968) (finding use of Zapruder film was non-infringing where value from film was in the underlying factual information of President Kennedy's assassination). This second factor weighs in Sapient's favor because the eight seconds at issue merely captures a live factual event and not a creative performance. Allegations of unclean hands and bad faith have nothing to do with this inquiry.

Finally, Plaintiff's analysis of the third factor (the amount and substantiality of the amount used) is also off base. Plaintiff agrees that only eight seconds were used but somehow insists that there is a factual dispute concerning this factor. There is none. When transformative criticism or parody is at issue, courts have found that secondary users may take as much of the work as they need to speak their minds. *See, e.g., Campbell*, 510 U.S. at 588-89; *Walking Mountain*, 353 F.3d at 803 n.8 (holding that entire verbatim reproductions are justifiable where the purpose of the work differs from the original, i.e. for criticism). Here, Sapient took only a tiny snippet of film describing Uri Geller's supposed abilities—just enough to set up the subsequent examination of those abilities. (MTD at 22).

Moreover, Plaintiff can find no support in the cases upon which it tries to rely: the work in *Harper* was an unpublished work (in contrast to the work here, which has been widely available for over 14 years) and the use in *Iowa State* was non-transformative and lacked the per se fair use purposes of criticism and commentary.

    3.    *Fair dealing is uniformly recognized as narrower and less flexible than fair use.*

Next, Plaintiff argues that its claim is not repugnant to the First Amendment and U.S. law because Section 30 of the British Copyright, Designs and Patented Act of 1988

11

("CDPA") allows for criticism and review of copyrighted materials under the doctrine of "fair dealing."

While it is true that Section 30 of the CDPA provides limited statutory protection for criticism, it is widely recognized that fair dealing is far narrower and less flexible than the United States doctrine of fair use. *See* Reply Appendix of Foreign Authority, Item 1 (COPINGER AND SKONE JAMES ON COPYRIGHT I, § 9-19) (noting that the framework of fair use under 17 U.S.C. § 107 is "a more flexible approach" than fair dealing under CDPA § 30, "allows [U.S.] courts to develop the law on a case-by-case basis as new problems emerge," and is not restricted solely to statutorily-approved uses such a those in § 30); Lloyd L. Weinreb, *Fair's Fair: A Comment on the Fair Use Doctrine*, 103 HARV. L. REV. 1137 (1990) (same); Robert C. Piasentin, *Unlawful? Innovative? Unstoppable? A Comparative Analysis of the Potential Legal Liability Facing P2P End-Users in the United States, United Kingdom, and Canada*, 14 INT'L. J. L. & INFO. TECH. 195, 211 (2006) ("In the UK, the fair dealing provisions are not as broad as the American fair use provisions since they only apply in certain limited situations...."); Lior Zemer, *Rethinking Copyright Alternatives*, 14 INT'L J.L. & INFO. TECH. 137, 142-43 (2006).

In fact, the "sufficient acknowledgement" requirement of Section 30(2) that Plaintiff highlights is a perfect example of this difference. Such acknowledgement is not required under U.S. law and appears nowhere in Section 107, contradicting Plaintiff's own assertion that the two doctrines are equivalent. Additionally, as even Plaintiff concedes, fair dealing does not incorporate the strong First Amendment protections underlying fair use in United States courts.

### D. Plaintiff Concedes That it Failed to Plead Essential Elements of Counts II and III.

Plaintiff concedes that it does not have a commercial disparagement claim against Sapient. It asks the Court to "ignore Count II's title of Commercial Disparagement, or allow the Plaintiff to amend this misnomer." (Opp'n at 21). Apparently, Plaintiff now wishes to assert a claim of corporate defamation so that it can argue that Sapient's alleged statements constitute defamation *per se*. The Court should not permit this, as defamation *per se* should not be applied to a corporation. *See Synygy, Inc. v. Scott-Levin, Inc.*, 51 F. Supp. 2d 570, 581 n.9 (E.D. Pa. 1999) (expressing "serious reservations about whether the doctrine of defamation *per se* is appropriately applied to corporate entities."). As Judge Brody of this Court has noted:

> The categories that make up defamation *per se* speak volumes about to whom the doctrine was intended to apply. Criminal offense, loathsome disease, business misconduct, serious sexual misconduct: these are allegation that would cause enormous personal humiliation and embarrassment to a human being, not a corporation. A corporation, however, cannot be embarrassed or humiliated. A corporation's analogue to humiliation would be damage to reputation – an injury that should translate into a pecuniary loss. If a corporation cannot point to loss of revenues or profits, for what are we compensating it? Should the law allow corporations to avoid showing special harm by taking advantage of an exception so clearly created to protect individuals? The rule of defamation *per se* as it applies to corporation has outrun its reason.

*Id.*

Even if defamation *per se* were to apply to corporations, Plaintiff's claim would *still* be deficient because Plaintiff has failed to allege even general damages and it apparently has no intention—or, more importantly, no ability—to do so. *See Pyle v. Meritor Sav. Bank*, No. 92-7361, 1996 U.S. Dist. LEXIS 3042, at *11 (E.D. Pa. Mar. 13, 1996) ("In a defamation per se case, a plaintiff must prove general damages from a defamatory publication and cannot rely upon

presumed damages."); *see also Walker v. Grand Cent. Sanitation*, 634 A.2d 237, 244 (Pa. Super. Ct. 1993). The Amended Complaint contains no allegations of general damages. Rather, it merely sets forth the elements of a defamation claim under Pennsylvania law in a conclusory manner. This is insufficient. *See Bell Atlantic Corp. v. Twombly*, No. 05-1126, 550 U.S. ___, slip op. at 8 (May 21, 2007) (holding that plaintiff cannot overcome a motion to dismiss by merely alleging "a formulaic recitation of the elements of a cause of action."). Therefore, regardless of how it is framed, Plaintiff's Count II fails to state a claim and should be dismissed at this time.

    Plaintiff's attempt to save its misappropriation claims (Count III) is equally unavailing. Plaintiff now argues (for the first time) that Sapient "offers trinkets for sale and directs [visitors to his website] to an Amazon.com portal were [sic] he gets commissions and/or royalties" (opp'n at 17, 22)—"facts" never even mentioned in the Amended Complaint. Irrespective of whether these allegations should be considered by the Court, it does not affect the merits of the claim because Plaintiff simply misunderstands the tort of misappropriation of likeness.

    The misappropriation tort allows an individual to protect the commercial value of his or her name and image. It seeks to prevent others from, in effect, claiming the endorsement of the plaintiff or an affiliation with the plaintiff without consent to sell or advertise its own goods. *See World Wrestling Fed'n Entm't, Inc. v. Big Dog Holdings, Inc.*, 280 F Supp. 2d 413, 444 (W.D. Pa. 2003) ("The right of publicity is often invoked in the context of commercial speech when the appropriation of a celebrity likeness creates a false and misleading impression that the celebrity is endorsing a product."); *see also Brockum Co. v. Blaylock*, 729 F. Supp. 438, 446 (E.D. Pa. 1990) (finding a misappropriation because defendant created clothing bearing the

names and images of musical groups without authorization). The mere fact that a defendant is involved in a business that seeks to earn a profit does not render that business liable to every person whose name or likeness it publishes. *See Fogel v. Forbes, Inc.*, 500 F. Supp. 1081, 1089 (E.D. Pa. 1980); *see also Jenkins v. Dell Publ'g Co.*, 251 F.2d 447, 450-51 (3d Cir. 1958). The tort of misappropriation does not apply to situations when a person's name or likeness is used to illustrate news. *Neff v. Time, Inc.*, 406 F. Supp. 858, 861 (W.D. Pa. 1976). Nor does the tort exist to prevent criticism. *See Big Dog Holdings*, 280 F. Supp. 2d at 445 (holding that parodies are entitled to First Amendment protection from misappropriation claims).

To establish a claim for misappropriation, Plaintiff must allege specific facts that show Sapient used the reputation, prestige, or social or commercial standing of Explorologist for his personal benefit through endorsement or association. *See Borton v. Unisys Corp.*, No. 90-4793, 1991 U.S. Dist. LEXIS 93, at *29-30 (E.D. Pa. Jan. 4, 1991). Plaintiff concedes that Sapient used the brief clip at issue here for the purposes of *criticizing* Uri Geller. This is exactly the opposite of using Geller's likeness to endorse goods, and it certainly does not suggest in any way that Geller is affiliated with Sapient or the Rational Response Squad. The use at issue here is no different than would be if Sapient had published a photograph of Geller as part of a critical magazine article that also contained advertising. It is not misappropriation.[10]

---

[10] Notably, Plaintiff does not allege that the alleged trinkets bear the likeness of Uri Geller or concern in any way Geller or Explorologist LTD.

## III. CONCLUSION

For the reasons stated above, as well as those included in Sapient's opening brief, Sapient respectfully requests that this Court dismiss Plaintiff's Amended Complaint with prejudice.

Respectfully submitted,

/s/ Chad Cooper
Samuel W. Silver (Pa. I.D. No. 56596)
Chad Cooper (Pa. I.D. No. 90067)
SCHNADER HARRISON SEGAL & LEWIS LLP
1600 Market Street, Suite 3600
Philadelphia, PA 19103-7286
(215) 751-2269; (215) 751-2309

Corynne McSherry (admitted *pro hac vice*)
Kurt Opsahl (admitted *pro hac vice*)
Jason Schultz (admitted *pro hac vice*)
ELECTRONIC FRONTIER FOUNDATION
454 SHOTWELL ST.
SAN FRANCISCO, CA 94110
415-436-9333
Fax: 415-436-9993

Marcia Hofmann (admitted *pro hac vice*)
ELECTRONIC FRONTIER FOUNDATION
1875 CONNECTICUT AVE SUITE 650
WASHINGTON, DC 20009
202-797-9009
Fax: 202-797-9066

*Attorneys for Defendant,*
*Brian Sapient*

Dated: July 9, 2007

**CERTIFICATE OF SERVICE**

The undersigned hereby certifies that on this 9th day of July, 2007, a true and correct copy of the foregoing Defendant's Reply Brief in Support of Motion to Dismiss Pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6) was served electronically, by way of the Court's electronic case filing system, and by First Class U.S. Mail, postage prepaid, addressed as follows:

        Alan L. Frank
        Alan L. Frank Law Associates PC
        8380 Old York Road
        Suite 410
        Elkins Park, PA 19027

        Richard Winelander
        1005 North Calvert St
        Baltimore, MD 21202


        /s/ Chad Cooper
        Chad Cooper