# APPENDIX OF FOREIGN AUTHORITIES ITEM 1

Westlaw.

UK COPINGER 9-19            FOR EDUCATIONAL USE ONLY                    Page 1


Copinger and Skone James on Copyright from Sweet and Maxwell
Part I - Copyright
Chapter Nine - Permitted Acts
4. - The Fair Dealing Provisions
A. - Overview
Copyright (C) Sweet & Maxwell, Ltd.

Commentary last updated September 1, 2004

9-19 - Overview

9-19

Introduced in 1911, the fair dealing provisions provide three important limitations to owners' rights, namely, fair dealing for the purposes of non-commercial research or private study, fair dealing for the purposes of criticism or review and fair dealing for the purpose of news reporting. Before the 1911 Act there were no statutory exceptions to copyright infringement in the United Kingdom, unlike in many civil law countries, which have long provided such provisions. [English and French versions of some of these early provisions can be found in Birrell, *Seven Lectures on the Law and History of Copyright in Books* (Cassell & Co., London, 1899) pp.182-185.] Nevertheless, the question of what amounted to "fair dealing" frequently arose under the law prior to 1911 in determining whether the use which had been made of the plaintiff's work was sufficient to constitute infringement. [*e.g.* Wilkins v Aikin (1810) 17 Vesey 422; Scott v Stanford (1867) L. R. 3 Eq. 718; Bradbury v Hotten (1872) L.R. 8 Ex. 1; Smith v Chato (1874) 31 L.T. 77. Prior to the 1911 Act, however, no cases had arisen on the question of whether there was a right to copy a work for the purposes of private study.] As such, this question was often not distinguished from the issue of whether a substantial part of the plaintiff's work had been taken. [In particular see Bradbury v Hotten (1872) L.R. 8 Ex. 1, but *cf.* Bell v Whitehead (1839) 8 L.J., N.S. (Equity) 141. For a review of the whole history of the "fair use" exception, see Burrell: "Reining in Copyright Law. Is Fair Use the Answer?" [2001] I.P.Q. 361.] Since the 1911 Act, the two issues have been quite distinct. It is only when the court has determined that a substantial part has been taken that any question of fair dealing arises.

As noted above, under the 1988 Act fair dealing is permitted for the purposes of private study or non-commercial research, criticism or review or the reporting of current events. Other types of dealing are not permitted no matter how "fair" they may be. ["It is fair dealing directed to and consequently limited to and to be judged in relation to the approved purposes. It is dealing which is fair for the approved purposes and not dealing which might be fair for some other purpose or fair in general", *per* Ungoed-Thomas J. in Beloff v Pressdram [1973] 1 All E.R 241 at 262; "The provisions are not to be regarded as mere examples of a general wide discretion vested in the courts to refuse to enforce copyright where they believe such refusal to be fair and reasonable", *per* Laddie J. in Pro Sieban Media AG v Carlton UK Tele-

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

vision Ltd [1998] F.S.R. 43 at 49 (reversed by the Court of Appeal, [1999] 1 W.L.R. 605; [1999] F.S.R. 610, but not with any disapproval of this statement). For further discussion, see Griffiths "Preserving Judicial Freedom of Movement--Interpreting Fair Dealing in Copyright Law" [2000] I.P.Q. 164.] This restricted approach can be contrasted with the fair use provisions under United States law, [Copyright Act 1976, 17 U.S.C., s.107.] which only provides guidelines as to what amounts to fair use [Sony Corporation of America v Universal City Studios (1984) 464 U.S. 417. This approach has been criticised for ignoring the principle of statutory construction *noscitur a sociis* (*i.e.* that the meaning of a doubtful word may be ascertained by reference to the meaning of words associated with it). See Goldstein, *Copyright*, (Boston: Little, Brown & Co., 1989) para.10.2.1.] and which are available in relation to all types of work. The Whitford Committee had recommended that a similar approach be adopted in the United Kingdom, [Report of the Committee to Consider the Law on Copyright and Designs, Cmnd. 6732, paras 672-677.] but this was rejected by the Government, together with a proposal to rename the defence "fair use" or "fair practice". [*Hansard*, HL Vol.491, cols 85-89. Although it was accepted that "dealing" is somewhat deceptive, in that it implies some form of transaction, it was retained on the grounds that the phrase is understood by lawyers and others in the field.] The argument against a codified system such as that in the United Kingdom is that a more flexible approach allows the courts to develop the law on a case-by-case basis as new problems emerge. [See Weinreb, "Fair's Fair: A Comment on the Fair Use Doctrine," (1990) 103 Harv. L. Rev. 1137.]

9-20

**The Berne Convention.** [For a full discussion of exceptions permitted under the Berne Convention, see para. 24-28 *et seq.*, below.] Article 10(1) of the Connvention provides that it is permissible to make "quotations" from a work which has already been lawfully made available to the public, provided that the making is compatible with fair practice, and their extent does not exceed that justified by the purpose, including quotations from newspaper articles and periodicals in the form of press summaries. Where such use is made, however, "mention" must be made of the source, and of the name of the author if it appears on the work. [Berne Convention, Art.10(3).] "Lawfully made available to the public" is a broader concept than that of a "published work" and would include, for example, a public performance or electronic dissemination. Furthermore, there is no requirement under the Article that the work be made available to the public with the author's consent, only that this has been lawfully done. Thus "lawfully made available to the public" might include a situation where a work is made available by virtue of a compulsory licence. Presumably, however, it would not include a situation where a work has only been distributed to a narrow category of persons. [As in Hubbard v Vosper [1972] 2 Q.B. 84, CA. See Ricketson, *The Berne Convention for the Protection of Literary and Artistic Works 1886-1986* (Kluwer, London, 1987) pp.491-493.] As to use for the purposes of reporting current events, a number of provisions of the Convention are in theory relevant. First, Article 2(8) excludes protection for "news of the day or to miscellaneous facts having the character of mere items of press information". [As to the doubtful nature of the exception, see Ricketson, *The Berne Convention for the Protection of Literary and Artistic Works 1886-1986* (Kluwer, London, 1987), p.303.]

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Secondly, Article 10 *bis*(1) provides for a limited class of exception, permitting "the reproduction by the press, the broadcasting or the communication to the public by wire of articles published in newspapers or periodicals on current economic, political or religious topics, and of broadcast works of the same character", provided a due acknowledgment is made. However, this is of little application in the present context since it does not apply if the right has been expressly reserved. Thirdly, Article 10 *bis*(2) states that it is for individual countries "to determine the conditions under which, for the purpose of reporting current events by means of photography, cinematography, broadcasting or communications to the public by wire, literary or artistic works seen or heard in the course of the event may, to the extent justified by the informatory purpose, be reproduced and made and available to the public". This Article is in effect dealing with incidental inclusion of works, and is not of general application in relation to reporting of current events.

9-21

**The Information Society Directive.** A number of provisions of the Directive apply in the area of fair dealing, and required several changes to be made to the 1988 Act. First, whereas the 1988 Act originally provided that fair dealing with a work for the purposes of "research" was permitted, Article 5(3)(a) of the Directive in effect stipulates that such acts must be of a non-commercial nature. The Act has therefore been amended to restrict this permitted act to research for a "non-commercial" purpose. Secondly, Article 5(2)(b) effectively requires the private study provision to be restricted to private study of a non-commercial nature, and the Act has been amended to make this clear. Thirdly, whereas the Act originally provided that fair dealing with a work for the purposes of criticism or review was permitted where the work was either published or unpublished, Artcle 5(3)(d) of the Directive stipulates that such use shall be permitted only where the use relates to a work or other subject-matter which has already been lawfully made available to the public. [This provision has clearly been taken from Art. 10(1) of the Berne Convention. See para. 9-20, below.] The Act has been amended accordingly. Fourth, although in some cases of fair dealing the Act required a "sufficient acknowledgment" of the work and its author to be made, no such acknowledgment was required in the case of fair dealing for the purposes of research or private study. The Directive has changed this. These amendments all take effect from October 31, 2003. [The Copyright and Related Rights Regulations 2003 (SI 2003/2498), para.1.]

9-22

**The Human Rights Act.** [What follows in this paragraph is based on Ashdown v Telegraph Group Ltd [2001] EWCA Civ 1142 [2002].] Consideration is given to the Human Rights Act 1998 elsewhere [See paras 3-260, above and 22-82 et seq., below.] but it has a potentially significant impact in the context of the fair dealing provisions, where the Article 10 right to freedom of expression will often overlap with the permitted acts of criticism, review and reporting of current events. In cases where it is necessary to reproduce a substantial part of a work for these purposes, the fair dealing provisions will usually permit this and thus the freedom of expression requirements of the Act will be satisfied. The requirement of fairness, particularly

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

in the context of a dealing for the purposes of reporting current events, will normally be flexible enough to enable a court to reflect properly the public interest in freedom of expression and, in particular, the freedom of the press. [This approach requires that decisions made before the Human Rights Act came into force as to what amounts to "fair" dealing should not be regarded as inflexible, although they are still important. The question which needs to be asked is: are the facts of the case such that the importance of freedom of expression outweighs the conventional considerations established by the earlier authorities as to what is "fair"? See *Ashdown*.] There may, nevertheless, be rare cases where the right of freedom of expression will come into irreconcilable conflict with the protection afforded by the 1988 Act, notwithstanding the express exceptions to be found in the Act, even when these expressions are construed liberally in favour of the user [See para. 9-23, below.] and a flexible approach is adopted in relation to what is "fair" use. Examples might be where the reporting in question cannot realistically be said to be of "current events", [A case suggested in *Ashdown*.] where the reporting of current events in the public interest can only effectively be done by the use of a photograph [Such use falls outside the permitted act provisions. See para. 9-47, below.] or where there is a sufficient public interest in the criticism or review of a work which has not previously been made available to the public. [Again, such use falls outside the permitted act provisions. See para. 9-37, below. The facts of Hubbard v Vosper [1972] 2 Q.B. 84, CA might be such a case.] In these circumstances, a court would be bound, in so far as it is able, to apply the Act in a manner that accommodates the right of freedom of expression. The possible methods of doing so would be to refuse the discretionary relief of an injunction, leaving the claimant to his remedy in damages (which will usually be the appropriate course), or by invoking the public interest defence. [See para. 22-82, below.]

9-23

**Approach to construction.** Some consideration has already been given as to how the permitted act provisions should be construed. [See para. 9-12, below.] In general, the fair dealing provisions involve issues on which a trial judge comes to a judgmental conclusion after taking into account a number of factors. As such, his decision should not be disturbed by the Court of Appeal unless it proceeded from some error of principle or is clearly unsustainable. [Pro Sieben Media AG v Carlton UK Television Ltd [1999] 1 W.L.R. 605; [1999] F.S.R. 610, approved by the House of Lords in Designers Guild Ltd v Russell Williams (Textiles) Ltd [2001] F.S.R. 113.] As to the various expressions, "criticism or review" and "reporting current events", these are expressions which should be interpreted liberally and their precise boundaries cannot be plotted: the nearer any use comes to the boundaries, unplotted as they are, the less likely is the use to be "fair". [Pro Sieben Media AG v Carlton UK Television Ltd [1999] 1 W.L.R. 605; [1999] F.S.R. 610. The same is no doubt true of the expressions "non-commercial research" and "private study".] All the fair dealing provisions use the words "for the purpose of". As to whether this expression imports an objective or subjective test, it is important to construe the composite phrases "for the purpose of non-commercial research" and "for the purpose of private study", etc. rather than each single word. When this is done, the precise mental element on the part of the user ceases to be of great importance. The words "in the

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

context of" or "as part of an exercise in" could be substituted for "for the purpose of" without any significant change of meaning. The task of the court is to consider the use made of the work and then ascertain what was the perceived purpose of that use. The user's subjective intention might well be relevant on the issue of whether the dealing was "fair", but it is wrong for a court to put itself in the user's shoes to decide what the purpose was. [Pro Sieben Media AG v Carlton UK Television Ltd [1999] 1 W.L.R. 605; [1999] F.S.R. 610. It was said there that to do so would, for example, encourage journalists to give implausible evidence as to their intentions if encouraged to think that a sincerely held belief as to the actual purpose would be sufficient. See Pro Sieben, above, at 620 and Hyde Park Residence Ltd v Yelland [2001] Ch. 143. If, however, the purpose is to discover whether the use fell within the ambit of the statute, there seems no good reason why both the user's actual intentions and also the impact of the use on the intended recipient should not be of help. If implausible evidence is given on behalf of the defendant, then it is unlikely to be believed.]

9-24

**Preparatory dealings.** In cases where there has been dissemination of a work for the purposes of criticism, review or reporting of current events, there will usually be other, preparatory acts of copying, especially where dissemination takes place via one of the established forms of media. In such a case, the preparatory acts will also have been carried out "for the purpose" of the relevant act. [Pro Sieben Media AG v Carlton UK Television Ltd [1999] 1 W.L.R. 605; [1999] F.S.R. 610. There, the defendant had made a copy of the whole of the claimant's television programme before deciding to use a short extract. Although there was little evidence about the circumstances in which this was done, the Court of Appeal accepted that it was copied simply in order for it to be available to the editor to consider whether to use an extract from it. Since the ultimate use of the extract was for the purpose of criticism or review, the making of the complete copy was for the same ultimate purpose. See also Time Warner Entertainment Ltd v Channel 4 Television Corporation Plc, [1994] E.M.L.R. 1; Television New Zealand v Newsmonitor Services Ltd (1993) 27 I.P.R. 441 (High Ct of New Zealand) at 467.] In those cases where a sufficient acknolwedgement is required, this raises a difficult issue as to whether the acknowledgment must be made in respect of these preparatory acts as well as the acts of dissemination. [See, further, para. 9-29, below.]

 See Supplement section, para. S9-20

 See Supplement section, para. S9-22

END OF DOCUMENT

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.